[Civil No. 1902.  Filed June 16, 1921.]

[198 Pac. 712.]

## BLOSSOM PASS, Personally and as Special Administratrix of the Estate of MARTINA S. KELLY, Deceased, Appellant, v. JOHN C. STEPHENS, Personally and as Trustee, Appellee.

1. WILLS—DEED AND WILL DISTINGUISHED.—Deeds once executed are irrevocable unless such power is reserved in the instrument, while wills are always revocable so long as the testator lives and retains testamentary capacity, and deeds take effect by delivery and are operative and binding during the life of the grantor, while wills have no effect until the testator's death.

2. DEEDS—WILLS—INTENTION GOVERNS IN CONSTRUING DEEDS AND WILLS.—It is the fundamental rule in the construction of both wills and deeds to give effect to the intention of the party executing the instrument, and this is to be arrived at by the language as found by the entire writing.

3. DEEDS — WILLS — MEANING SHOULD BE GIVEN TO EVERY WORD. — Every clause, and even every word, in a deed or will, should, when possible, have assigned to it some meaning.

4. EVIDENCE—WILLS—COLLATERAL EVIDENCE ADMISSIBLE ONLY WHEN THE TERMS OF THE WRITING ARE NOT CLEAR.—It is only when the terms of a deed or will are not clear that collateral evidence may be received to ascertain its intent; otherwise the intention must be gathered from the instrument itself.

5. WILLS—DEED INTENDED AS TESTAMENTARY DISPOSITION INVALID.—Where a testatrix in making testamentary disposition adopted the form of a deed for the purpose of evading the statute of wills, the instrument will be void because not executed as a will; but,

---

5. For authorities discussing the question as to when deed is deemed to be testamentary in character, see notes in 7 Ann. Cas. 790; 11 A. L. R. 23; 1 L. R. A. (N. S.) 315.

if the grantor intended a present disposition of property, the instrument is valid.

6. WILLS—IN DETERMINING WHETHER INSTRUMENT IS DEED OR WILL, ITS FORM SHOULD HAVE WEIGHT.—In determining whether an instrument was a deed or will, its form as a deed should have weight.

7. WILLS—INSTRUMENT HELD DEED AND NOT TESTAMENTARY DISPOSITION.—An instrument whereby the grantor made a present disposition of her property in trust *held* a deed and not a will, though the trustee was required to maintain the grantor and to pay her debts and the expenses of her last illness, etc.

8. DEEDS—WILLS—NO LIVERY OF SEIZIN REQUIRED—FAILURE TO TAKE POSSESSION DOES NOT AFFECT VALIDITY.—There is no livery of seizin in Arizona, and the fact that the grantee failed to take possession does not change the instrument from a deed into a will.

9. TRUSTS—DEED TO TRUSTEE SUPPORTED BY CONSIDERATION.—Where a deed to a trustee provided for the maintenance of the grantor during life, etc., such consideration is adequate where the instrument was attacked only by the administratrix.

10. TRUSTS—CONFIDENCE PLACED IN TRUSTEE SUFFICIENT CONSIDERATION.—Where the grantor conveyed property in trust, providing that the grantee should maintain grantor during her life and at her death pay her debts and make gifts to specified persons, the confidence placed in the grantee, who was trustee, and his undertaking to execute the trust, was a sufficient consideration.

11. DEEDS — NO SPECIAL FORM NECESSARY FOR DELIVERY. — No particular form or ceremony is necessary to constitute delivery of a deed; the simplest form being by mere manual transfer of the instrument by the grantor to the grantee, with the intention of relinquishing control over it and to pass title to the property.

12. DEEDS — EVIDENCE HELD SUFFICIENT TO ESTABLISH DELIVERY. — Evidence *held* sufficient to establish delivery of a deed.

13. ACKNOWLEDGMENT—NOTARY HELD A DE FACTO OFFICER SO THAT ACKNOWLEDGMENT WAS VALID.—Though a notary at the time he took an acknowledgment, which was after reappointment, had not filed with the clerk of the court the oath and bond required by Civil Code of 1913, paragraph 136, he must be deemed a *de facto* officer and the acknowledgment valid.

14. DEEDS—MERE MENTAL WEAKNESS WILL NOT INVALIDATE DEED, BUT GRANTOR MUST BE INCAPABLE OF UNDERSTANDING THE INSTRUMENT.—Mere mental weakness in the grantor does not invalidate a deed, and to have that effect the mental power must be so far deteriorated or destroyed that the grantor is incapable of understanding in a reasonable degree and knowing the consequences of the instrument he executes.

15. DEEDS—SICKNESS AND OLD AGE DO NOT AMOUNT TO INCAPACITY.—Sickness and old age do not, in and of themselves, amount to incapacity to execute a deed.

16. DEEDS — PECULIARITIES OF GRANTOR DO NOT RENDER DEED INVALID.—Mere peculiarities or eccentricities of the grantor do not, of themselves, make a deed invalid.

17. DEEDS — EVIDENCE INSUFFICIENT TO ESTABLISH GRANTOR'S INCAPACITY.—In an action where a deed was attacked by the grantor's administratrix, evidence *held* insufficient to establish the grantor's incapacity.

18. DEEDS—GRANTOR'S CONDITION AT TIME OF EXECUTION IS DECISIVE OF CAPACITY.—The time of the execution of a deed is the material point of time to be considered on an inquiry as to the grantor's capacity to make it.

19. DEEDS—TO INVALIDATE, UNDUE INFLUENCE MUST HAVE DEPRIVED GRANTOR OF FREE AGENCY.—Undue influence which will justify the setting aside of an executed deed must have been of such a nature as to deprive the grantor of his free agency and render the act more the offspring of the will of another than of the grantor's own will, but it is not sufficient that the execution of the deed was procured by honest argument or persuasion untainted with fraud.

20. DEEDS—EVIDENCE INSUFFICIENT TO SHOW THAT A DEED WAS THE RESULT OF UNDUE INFLUENCE.—Evidence *held* insufficient to show that a deed was the result of undue influence.

21. DEEDS — RELATIONSHIP BETWEEN BROTHER AND SISTER NOT FIDUCIARY.—Where an aged woman executed a deed to her brother as trustee, the relations between the two cannot be deemed fiduciary, only the ordinary relations between brother and sister appearing; for a fiduciary relation ordinarily grows out of the relation of administrator and heir, guardian and ward, attorney and client, principal and agent.

APPEAL from a judgment of the Superior Court of the County of Yavapai. John J. Sweeney, Judge. Affirmed.

Messrs. O'Sullivan & Morgan and Mr. R. B. Westervelt, for Appellant.

Messrs. Anderson, Gale & Nilsson, for Appellee.

BAKER, J.—The appellant brought this suit in the superior court of Yavapai county, as the special

administratrix of the estate of Martina S. Kelly, deceased, and personally, as the adopted daughter and sole heir at law of said deceased and her predeceased husband, William N. Kelly, to cancel and set aside a deed executed by Martina S. Kelly on her deathbed, and to recover certain real and personal property described in said instrument.

One of the inquiries much contested in the case is whether the paper executed by the deceased, Martina S. Kelly, is a deed or an attempted testamentary disposition of property. The solution of the question involves the proper construction of the instrument. The superior court held it was a deed.

The instrument executed by the deceased had the caption "Deed." It contains apt words of conveyance. It purports to be made to the appellee, John C. Stephens as trustee, in consideration of $10, and in the further consideration of certain trusts therein named. It contains this clause:

"This conveyance being made by the grantor and accepted by the grantee, upon the following trusts:

"That the grantor shall be provided and cared for and maintained in suitable condition during her natural life; and the debts, costs, charges and expenses of her last sickness and funeral shall be paid, and an appropriate granite monument erected at her grave.

"That Charles Lauby shall be paid the sum of three thousand dollars ($3,000.00) in full for his past faithful services.

"That the remaining property shall be divided as follows: John C. Stephens to receive an undivided one-half thereof; Josephine S. Potts to receive an undivided sixth thereof; Edith W. Baehr to receive an undivided sixth thereof, and Pearl W. Wilson to receive an undivided one-sixth thereof."

It contains two other clauses as follows:

"In order to carry out the terms of the trust hereby imposed, the said grantee shall have full and

complete charge of and authority over all of the property hereby conveyed, with absolute power to sell and dispose of or to mortgage the same in order to procure the necessary funds, or to pay and satisfy existing liens and taxes against any of the property hereby conveyed, and to preserve the same, all such matters to be determined by him according to his own best judgment.

"Within a reasonable time after the death of the grantor the grantee shall settle all outstanding indebtedness imposed by the above trustee and shall sell and dispose of all remaining property and divide the proceeds of sale among the parties entitled thereto in proportion to their several interests as hereinabove stated."

It purports to have been signed by the deceased on the fourth day of March, 1920. In the appropriate place for acknowledgment of the paper is this:

"State of Arizona,

County of Yavapai—ss:

"This instrument was acknowledged before me this 4th day of March, A. D. 1920, by Martina S. Kelly.

"My commission expires Feb. 28, 1924.

"[Notarial Seal.]

"ZIBA O. BROWN,
"Notary Public."

In *Sharp et al.* v. *Hall*, 86 Ala. 110, 11 Am. St. Rep. 28, 5 South. 497, the distinction between wills and deeds is tersely stated as follows:

"Deeds, once executed, are irrevocable unless such power is reserved in the instrument. Wills are always revocable, so long as the testator lives, and retains testamentary capacity. Deeds take effect by delivery, and are operative and binding during the life of the grantor. Wills are ambulatory during the life of the testator, and have no effect until his death."

See, also, monographic note to *Burlington University* v. *Barrett*, 92 Am. Dec. 383–389.

The fundamental rule in the construction of both wills and deeds is to give effect to the intention of the party executing the instrument, and this is to be arrived at by the language used, as found in the entire writing. Bishop, Contracts, par. 380. Every clause, and even every word, should, when possible, have assigned to it some meaning. Bishop, Contracts, par. 384. It is only when the terms of the writing are not clear that collateral evidence may be received to ascertain its intent. *In re Longer,* 108 Iowa, 34, 75 Am. St. Rep. 206, 78 N. W. 834. Otherwise the intent will be gathered from the instrument itself. *Wilson* v. *Carter,* 132 Iowa, 442, 109 N. W. 886; *Abbott* v. *Parker,* 103 Ark. 425, 147 S. W. 70.

We think the law undoubtedly is that if the deceased intended the instrument in question as a testamentary disposition, to take effect only upon her death, and adopted the form of a deed for the purpose of evading the statute of wills, then doubtless it would be void, because not executed as a will, but if she, in good faith, intended it as a present disposition of the property, it is valid. Now, the instrument is in form a trust deed. While an instrument in form a deed may nevertheless be construed as a will, that it is in form a deed should receive some weight. It must be assumed that the maker had some understanding of the nature of the instrument. The instrument, in this case, clearly shows on its face that the grantor intended to convey to the grantee the property described, impressed with a trust, the terms of which are plainly stated and set out. It has but one reading. It contains no terms indicating an intention to postpone its operation until after the death of the grantor, nor are there any reservations made. It is plainly a deed. The intention of the grantor to divest herself of all title to the property is apparent on the face of the instrument.

But it is insisted by counsel for the appellant that the instrument is not a deed, but is testamentary in character. The contention is based upon the provision in the instrument:

"Within a reasonable time after the death of the grantor, the grantee shall settle all outstanding indebtedness imposed by the above trusts and shall sell and dispose of all remaining property and divide the proceeds of sale among the parties entitled thereto in proportion to their several interests as hereinabove stated."

It is obvious that this clause has no reference to the time when the instrument should take effect and become operative to pass title, and it affords no room for any inference of an intent to evade the statute of wills. It is but one of the terms of the trust, one of the duties imposed upon the trustee, thus deferred or postponed. The same observation is true as to the clause providing for the payment of the grantor's debts and the expenses of her last illness and placing a monument at her grave. These are only superadded duties of the trustee.

It is argued that the grantee did not take possession of the property until after the death of the grantor. This did not affect the title. We have no livery of seizin in this state. Even though possession of the property was dependent upon the event of the death of the grantor, the instrument would remain a deed and not a will. *Henry* v. *Phillips,* 105 Tex. 459, 151 S. W. 533; *Griffis* v. *Payne,* 92 Tex. 293, 47 S. W. 973.

As to want of consideration, this is no contest by creditors. It is an attack on a transfer made by a sister to a brother, in which she transferred what she no longer needed, providing by the transfer what in her judgment she wished the grantee should receive direct to himself and what he should take in trust for the use and benefit of other relatives and

a certain faithful employee. The covenant in the deed to care for and maintain the grantor in suitable condition during her natural life was a valuable consideration and not merely a nominal one. It was adequate if the grantor was satisfied with it, which she appears to have been. 13 C. J. 322. The confidence placed by the grantor in the grantee, and his undertaking to execute the trust, was sufficient consideration. 39 Cyc. 41.

It is insisted that there was no delivery of the deed. That is a question of fact. The superior court found there was a delivery of the instrument.

"No particular form or ceremony is necessary to constitute a 'delivery' of a deed. It may be by acts without words, or by words without acts, or both. Anything which clearly manifests the intention of the grantor and the person to whom it is delivered that the deed shall presently become operative and effectual, and that the grantor loses all control over it, and that by it the grantee is to become possessed of the estate, constitutes a sufficient 'delivery.' *Baker* v. *Hall,* 214 Ill. 364, 73 N. E. 351, 353; *Webster* v. *Sherman,* 33 Mont. 448, 84 Pac. 878, 881 (quoting *Cady* v. *Zimmerman,* 20 Mont. 225, 50 Pac. 553).

"The simplest mode of delivering a deed is by manual transfer of it by the grantor to the grantee, with the intention of relinquishing all control over the instrument and of passing title to the property. This delivery is defined an 'absolute delivery,' and undoubtedly it constitutes a consummation of the deed." 8 R. C. L. 983.

The clause in the paper, "in order to carry out the terms of the trust hereby imposed, the said grantee shall have full and complete charge of and authority over all of the property hereby conveyed, with absolute power to sell and dispose of, or to mortgage the same, etc.," clearly expresses the intention of the grantor to give the grantee complete

dominion and control over the property and to invest him with absolute power to sell or dispose of the same in furtherance of the trust. The evidence tends to show that at the time the grantor executed the instrument she gave it unconditionally to the grantee, who took it, and in turn delivered it to the scrivener to keep for him. Thereafter the grantor exercised no dominion or control over the instrument. The evidence abundantly supports the finding that there was a delivery of the deed.

It is insisted that the deed was not acknowledged before an officer authorized to take acknowledgments, and was therefore void. The evidence shows that the notary who took the acknowledgment, Mr. Brown, had been duly commissioned and had taken an oath and had been acting as notary for several years, but that he had failed, on his reappointment as such notary, to take and subscribe the oath prescribed by law and file a bond to the state to be approved by the chairman of the board of supervisors, and that he had not filed such oath and bond with the clerk of the court at the time the acknowledgment was taken, all as required by paragraph 136, Revised Statutes of Arizona of 1913. Within a few days after taking the acknowledgment he did, however, take such oath and file the bond required by law, whereupon a new commission was issued to him. We think that Brown was an officer *de facto,* and that the acknowledgment was sufficient.

"There is no distinction in law between the official acts of an officer *de jure* and those of an officer *de facto.* . . . Accordingly an acknowledgment is valid if taken by a *de facto* officer. . . . The rule applies generally to acknowledgments taken by officials who have lost the legal right to exercise the powers of office by reason of resignation, expiration of their terms, or the like." 1 R. C. L. 268, 269, and cases cited in footnote.

The appellant furiously, insistently, attacks the deed as void, because obtained through fraud and undue influence, and because the grantor lacked the requisite necessary mental capacity to execute the instrument.

It is well settled that mere mental weakness in the grantor does not invalidate a deed. To have that effect the mental power must be so far deteriorated or destroyed that the grantor is incapable of understanding in a reasonable degree and knowing the consequences of the instrument he executes. This, we take it, is a fair statement of the rule of law, without citing the numerous cases applying the rule. 18 C. J. 218, 219, and cases found in footnotes.

"As to deeds, it may be stated in a general way that senility, eccentricity, or even partial impairment of mental faculties is not necessarily sufficient to incapacitate the grantor, if he has sufficient mental capacity to comprehend the nature of the transaction and protect his own interest." 8 R. C. L. 946.

The legal evidence, while conflicting, falls very far short of satisfying us that the grantor did not have sufficient mental capacity to fairly understand the nature and consequences of her act in executing the deed. Mrs. Kelly was a widow at the time; her husband, William N. Kelly, having died some three years prior to her death. She was about sixty-seven years of age. The deed was executed on March 4, 1920, two days prior to her death. She had been ill for several months, and for two or three weeks prior to her death she had been bedridden. She was in such a feeble state that she had to be raised and held in a sitting position in her bed while she signed the deed. For several days prior thereto, and on the day when the instrument was executed, two doses of morphine daily were administered to her to relieve her from physical suffering. Notwithstanding

these conditions, the evidence tends to show that she was mentally alert, understood her surroundings, and knew what she was doing. Her mental condition at the time is best shown by her insisting that the conditions of trust, as she stated them, should be embodied in the deed, so that the grantee would be compelled to carry them out. This was certainly a rational act. She stated the purposes of the instrument to the scrivener and he was required to redraw the deed so as to conform to her express purposes and conditions. Mr. Brown, the scrivener, who had been attending to her legal business for some fifteen years, and was intimately acquainted with her, testified:

"I prepared a deed, took it down, and went over the matter with her. I wanted to make sure that she knew absolutely what she was doing. Her mind appeared to be just as clear and unclouded as it was at any other time. I satisfied myself at the time that her mind was absolutely clear."

The attending physician, Dr. Southworth, testified:

"I think Mrs. Kelly realized she was on her deathbed. From my observation of Mrs. Kelly during the last ten days of her life I would say she was sane."

Only acts tending to show some degree of childishness, eccentricity, and petulance on the part of Mrs. Kelly, upon several occasions long prior to her death, were shown for the purpose of invalidating the deed. There is some evidence that at times, in a fit of passion or uncontrolled temper, she would threaten to commit suicide or destroy her property to prevent her relatives from inheriting it. But it does not appear therefrom that her mental faculties were impaired. Sickness and old age do not, in and of themselves, amount to incapacity to execute a deed. *Lee* v. *Lee,* 258 Mo. 599, 167 S. W. 1030; *Wilkinson* v. *Sherman,* 45 N. J. Eq. 413, 18 Atl. 228. Mere

peculiarities or eccentricities of a grantor do not, of themselves, make a deed invalid. *Ellis* v. *McNally* (Mo.), 177 S. W. 654. The statements of several of the witnesses for the appellant that Mrs. Kelly was often hysterical and flew into violent passion, and that in their opinion she was crazy, were of but little value in the judicial inquiry as to her competency to make the instrument. The references are to past incidents in her life. The time of the execution of a deed is the material point of time to be considered on an inquiry as to the grantor's capacity to make it. *Armstrong* v. *Burt* (Tex. Civ. App.), 138 S. W. 172; *Wampler* v. *Harrell,* 112 Va. 635, 72 S. E. 135; *Woodville* v. *Woodville,* 63 W. Va. 286, 60 S. E. 140.

It is important to understand what constitutes undue influence as will vitiate a deed procured by its exercise over the grantor. Undue influence which will justify the setting aside of an executed deed must have been of such a nature as to deprive the grantor of his free agency, and thus to render his act more the offspring of the will of another than of his own will. *Kline* v. *Kline,* 14 Ariz. 369, 128 Pac. 805. It is not sufficient to avoid a deed that its execution was procured by honest argument or persuasion untainted with fraud. In *Dickie* v. *Carter,* 42 Ill. 376, the court said:

"If all is fair, and the result of honest argument and persuasion, or of such influence as one may properly obtain over another, the will [deed] must stand."

In the case of *Yoe* v. *McCord,* 74 Ill. 44, the same court said:

"To avoid a will [deed] the influence which is exercised must be undue, and this, in a legal sense, is something wrongful—a species of fraud."

In *Bishop* v. *Hilliard,* 227 Ill. 382, 81 N. E. 403, it is said:

"Mere advice, argument, or persuasion, if the grantor's mind acts freely thereunder, does not constitute undue influence, though it may lead to the making of the instrument when it would not otherwise have been made."

Now the evidence mainly relied upon to prove undue influence is that of the witnesses Henry Hartin and Mrs. Scott, who testified in behalf of the appellant at the trial. Hartin testified:

"She [Mrs. Wilson] said when she got here she found her aunt had made a will, and that she saw a letter from a niece of Mr. Kelly's to Mrs. Kelly and on the back of this letter was a draft which Mr. Z. O. Brown had made of the distribution of her property. There was a dollar each to her relations here, and mentioned that Mrs. Stone got some birds and buggy, I believe, and a few other articles, and mentioned Charles Lauby and all those nieces of Mr. Kelly's. She said that after she saw how things were going with the property, she asked her why she done as she did and why she hadn't remembered Johnny Stephens, her uncle. She told what she thought of Johnny Stephens, and after some time Mrs. Wilson said, 'I persuaded her she ought to make a change in this,' and she said Mrs. Kelly gave an order for the will which she had made, and the will was destroyed, and that she had consulted Judge Wells and Judge Wells had advised her making it in the way of a deed, or a trust, as I remember. It was a trust deed and did away with the probating of a will."

Mrs. Scott testified:

"I know Mrs. Pearl Wilson. I had a talk with Mrs. Wilson the day after Mrs. Kelly passed away, in the library of the Kelly house. Pearl Wilson said she had coaxed her aunt to make up with her Uncle John. She said she didn't approve of the will that Mrs. Kelly had made and she persuaded her to make another one, and she persuaded her aunt to send for her Uncle John, and then they made another will, and instead of excluding the family, why, they made it in favor of her sister and uncle and the family."

The most that can be said of this testimony is that Mrs. Wilson persuaded Mrs. Kelly to "make up" with her brother, and execute the deed to him and revoke a former will made by her. The will was made in favor of a niece of her deceased husband. The niece lived in a distant state, and Mrs. Kelly had never seen her and did not know her except through a very limited correspondence. In this will Mrs. Kelly made no provision for the appellant other than devising her one dollar. The beneficiary in the deed of trust, Josephine S. Potts, was a sister of Mrs. Kelly, and the beneficiaries Edith W. Baehr and Pearl W. Wilson were her own nieces. We fail to see anything vicious or reprehensible in the conduct of Mrs. Wilson. For aught that appears in the record the arguments used by her were fair, reasonable, and well founded. There is an entire absence of any evidence tending to show that any trick, artifice, device, misrepresentation, or other fraud was practiced. It does not appear that there was any effort to prejudice Mrs. Kelly against the appellant. The will was destroyed in the presence of Mrs. Kelly and at her request. There is not, so far as we have been able to find, a particle of evidence to the effect that the appellee, Stephens, ever requested, much less unduly influenced, Mrs. Kelly to make the deed. To hold that the act was not her own voluntary one would be but an inference, from the testimony of Henry Hartin and Mrs. Scott, which we think is wholly unjustifiable. We discover nothing in the testimony to indicate that the deceased was under any such control, or that she was overpersuaded or unduly influenced, as that she was not able to act freely and according to her own judgment. No rule of law required that Mrs. Kelly should make the appellant one of the beneficiaries under the deed of trust. She had the legal right to prefer one rela-

tive and cut off another, with or without a reason, or she might have made an entire stranger the sole beneficiary under the deed. It was her property to do with as she saw fit. In the absence of proof of unsoundness of mind or of undue influence by others, no court would be justified in transgressing her wishes or setting aside her action.

We are at a loss to perceive upon what theory a fiduciary relation between the parties can be said to exist. Nothing more than the ordinary and usual relation of brother and sister seemed to have existed between the appellee and Mrs. Kelly during her life. A fiduciary relation, which brings the parties within the rule contended for by counsel for the appellant, is one growing out of the relation of administrator and heir, guardian and ward, attorney and client, principal and agent; in other words, where the business of one is intrusted to another in such a way as to render the principal liable to be imposed upon by the agent. It is sometimes defined to be:

"That relation existing between parties, where one holds the character of a trustee or a character analogous thereto, such as agent, guardian, and the like, and the person stands in such a position that he has rights and powers which he is bound to exercise for the benefit of the other person." 13 Am. & Eng. Ency. of Law (2d ed.), 10.

We have not overlooked other points raised and discussed by counsel for the appellant in their brief. We regard these points as insufficient to affect the result.

From what has been said, it follows that the judgment of the superior court must be, and is, affirmed.

ROSS, C. J., and McALISTER, J., concur.