407 P.2d 786

Lawrence A. HAN and Elizabeth Han, husband and wife, Appellants,

v.

Norman R. HORWITZ and Celia Horwitz, husband and wife, Philip Hildreth and Gina Dessart Hildreth, husband and wife, and Arizona Land Title and Trust Company, a corporation, as Trustee under Trust Agreement No. 5418–T, Appellees.*

No. 2 CA–CIV 10.

Court of Appeals of Arizona.

Nov. 17, 1965.

---

\* This appeal was filed with the Arizona Supreme Court and assigned that Court's

No. 7368. The matter was referred to this Court pursuant to § 12–120.23 A.R.S.

Riley & Riley, by George W. Riley, Tucson, for appellants.

Johnson, Darrow, D'Antonio, Hayes & Morales by Lawrence P. D'Antonio and Burt L. Haberman, Tucson, for appellees.

HATHAWAY, Judge.

Lawrence and Elizabeth Han, plaintiffs below, filed an action to rescind a purchase of realty on the grounds that they had been fraudulently induced to enter into the contract to purchase by misrepresentations of a realty salesman. At the close of plaintiff's case, defendants' motion for a directed verdict was granted and judgment entered in accordance therewith, from which this appeal is brought by the plaintiffs.

In substance plaintiffs' assignments of error present the following questions for our consideration:

1. Did the lower court err in directing a verdict for the defendant at the close of the plaintiffs' case?

2. Did the lower court err in rejecting proffered testimony of plaintiff-husband?

3. Did the lower court err in refusing to permit the reading of the deposition of a witness?

4. Did the lower court err in refusing to admit a United States Government map into evidence for illustrative purposes?

The evidence adduced by the plaintiffs in the course of trial can be summarized as follows: The plaintiffs, seeking a realty investment, were driven by a local real estate broker to the site of the forty acre parcel which is the subject of this lawsuit. They were accompanied by a member of the broker's sales force who was in the process of being trained. Upon arrival at the property which consisted of unimproved desert land, the broker pointed out the boundaries and when asked about encumbrances, disclosed information about the existence of two particular encumbrances. There was no reference in the conversation to the existence of any mining claims.

Mr. Han wanted to walk around and look at the property. The broker indicated that her high-heeled shoes were not suitable for traversing the terrain and suggested that the salesman accompany him. The broker and Mrs. Han remained in the car. Mr. Han and the salesman walked across the property and on the return trip Mr. Han observed two small excavations about a hundred feet apart. He testified on direct examination concerning a conversation with the salesman regarding the holes:

"Q. What did you say to Segal and what did he say to you in reference to this excavation that you found on the premises?

A. I said to Mr. Segal, 'What is the meaning of these holes? And why are people allowed to make holes and not cover them again?'

So Mr. Segal said it was nothing. I kept questioning him again. Then—

Q. What did he say?

A. Mr. Segal said, 'Those are rock hounds' holes. The rusted cans on the bottom of those pits,' he said it took those people some time to dig them, so they are obviously, they came over the week-end and camped there, and when they finished with their, whatever they were doing, they dumped all the dirt in those holes.

From then on we went to, we met Mrs. Arnold and Mrs. Han."

Mr. Han admitted that this explanation concerning the excavations satisfied him and he made no further inquiries concerning them. After preliminary negotiations, the Hans executed a Deposit Receipt and Agreement, offering to purchase the property subject to all reservations of record. The closing date was set for three months later, during which period a Preliminary Report of Title Insurance was issued, showing that mineral rights were reserved to the United States Government. This report was at the broker's office but the Hans never requested to see it.

At the closing of the sale, a deed to the property reciting that it was subject to all reservations of record was delivered to the Hans. They signed the deed as grantees, evidencing their intention to take title in joint tenancy. The title insurance policy delivered at this same time to the Hans excepted reservations made in United States Patents.

Approximately two months after the sale was consummated, the Hans decided to offer the property for sale whereupon they discovered that mining claims on the subject property had been recorded. They wrote to the sellers asking that the sale be rescinded because of misrepresentation by the sellers' agent with regard to excavations on the property. The sellers refused to rescind and the Hans filed suit for rescission naming as defendants the Hildreths, holders of the mortgage which plaintiffs had assumed, Arizona Land Title and Trust Company as Trustee of Trust No. 5418-T, record seller of the property, and Mr. and Mrs. Horwitz, beneficiaries of the aforementioned trust.

The plaintiffs rely on the theory that the acts of the agent in negotiating the sale to the buyer are chargeable to his principal, the seller, because the principal is deemed to have ratified the agent's conduct by retaining the benefits of the transaction. We agree that this principle is applicable in this case. 2 C.J.S. Agency § 49; 3 Am.Jur.2d, Agency § 175; Light v. Chandler Improvement Co., 33 Ariz. 101,

108, 261 P. 969, 57 A.L.R. 107 (1928); Bailey v. Kuida, 69 Ariz. 357, 360, 213 P.2d 895 (1950); Miller v. Boeger, 1 Ariz.App. 554, 405 P.2d 573 (1965).

Therefore, for purposes of this opinion, the statements of Segal will be deemed statements of the defendants. As we pointed out in Miller v. Boeger, supra, there is a basic difference between an action in fraud for damages and an action for rescission. However, where rescission is sought on the basis of misrepresentation, we feel that the general law applicable to an action in fraud is also applicable to an action for rescission insofar as the initial element of fraud is concerned, i. e., a misrepresentation. Whether rescission of a contract may be had in this jurisdiction for an innocent misrepresentation is not a matter which we must decide in the case at bar.

As a general rule, with certain exceptions not applicable here, in order to constitute actionable fraud, the misrepresentation must relate to a matter of fact which either presently exists or has existed in the past. 23 Am.Jur., Fraud and Deceit § 27. If the alleged misrepresentation is only an expression of opinion or a guess on the part of the speaker and the hearer would understand it to be such, it cannot constitute a basis for either actionable fraud or rescission.

An examination of Segal's statements in the light of the circumstances show that he was expressing a guess, or at most an opinion, as to the meaning of the holes. To take this innocuous observation of the agent and call it a representation as to mining claims is stretching it completely out of proportion under the circumstances. We feel that anyone hearing the agent's remarks would accept them as being no more than a casual opinion or surmise of the agent as to the significance of the holes. We hold that there was no representation as to a past or presently existing fact, an indispensable element in an action for rescission.

We see no merit in plaintiffs' additional assignments of error. The court sus-

tained an objection to the following question propounded by plaintiffs' attorney to Mr. Han:

"Would you have bought the property if you had known there were mining locations on it before you paid the money?"

In view of our ruling that there was no misrepresentation which would be grounds for rescission, this point has become moot.

At the trial, plaintiffs were not permitted to read the deposition of a trust officer of Arizona Land Title and Trust Company but instead were required to call him as a witness. Plaintiffs argued that pursuant to Rule 26(d) (2), Arizona Rules of Civil Procedure, 16 A.R.S., the deposition was admissible for any purpose as that of an adverse party. It is not necessary to this decision to consider whether the trust officer was a managing agent within the purview of Rule 26(d) (2). He testified at the trial and plaintiffs were not prejudiced thereby.

Another assignment of error is directed to the court's refusal to admit a United States government map into evidence for illustration purposes. The admission of evidence is within the discretion of the trial court and this court will not disturb such ruling except for abuse of discretion. Henderson v. Breesman, 77 Ariz. 256, 262, 269 P.2d 1059 (1954); Throop v. F. E. Young & Co., 94 Ariz. 146, 155, 382 P.2d 560 (1963). If the map in question would have aided the jury in understanding the witness' testimony it should have been admitted. Slow Development Company v. Coulter, 88 Ariz. 122, 129, 353 P.2d 890 (1960). However, we find no error in excluding the map. Introduction of the map, rather than serving to give the jury a clearer picture of the facts, might have served to confuse.

Plaintiffs contend that, notwithstanding a jury in an equity action is only advisory, the trial court erred in withdrawing the case from the jury's consideration. When the plaintiffs rested their case, the defendants' motion for a directed verdict admitted the truth of the plaintiffs' evidence and all reasonable inferences therefrom. Davis v. Weber, 93 Ariz. 312, 314, 380 P.2d 608 (1963). However, as we have previously indicated, the plaintiffs failed to prove a misrepresentation upon which rescission could be based. The trial court correctly withdrew the case from the jury's consideration as the only question to be resolved by the court in ruling on defendants' motion was—did plaintiffs make out a prima facie case? Joseph v. Tibsherany, 88 Ariz. 205, 210, 354 P.2d 254 (1960). We agree that they did not.

In an equity case, if the facts are not in dispute, the court's duty is the same as if the action were one at law. If the court would be required to direct a verdict in an action at law, it is proper to withdraw the case from the jury's consideration in an equity case. Stephens v. White, 46 Ariz. 426, 440, 51 P.2d 921 (1935); Rundle v. Winters, 38 Ariz. 239, 242, 298 P. 929 (1931); Preston v. Denkins, 94 Ariz. 214, 221, 382 P.2d 686 (1963).

Judgment affirmed.

WILLIAM C. FREY and RICHARD N. ROYLSTON, Superior Court Judges, concur.

NOTE: The Honorable HERBERT F. KRUCKER and Honorable JOHN F. MOLLOY having requested that they be relieved, the Honorable WILLIAM C. FREY and Honorable RICHARD N. ROYLSTON, Judges of the Superior Court, Pima County, were called to sit in their stead and participate in the determination of this decision.