461 P.2d 508

In the Matter of the ESTATE of Bessie POHNDORF, Deceased.

Edgar M. POHNDORF, Appellant,

v.

The VALLEY NATIONAL BANK OF ARIZONA, As Executor of the Estate of Bessie Pohndorf, Deceased, Appellee.

No. I CA–CIV 924.

Court of Appeals of Arizona.
Division 1.
Nov. 18, 1969.

W. Francis Wilson, Phoenix, for appellant.

Jennings, Strouss, Salmon & Trask, by Ozell M. Trask, Phoenix, for appellee.

HOWARD, Judge.

This is a contest of a will after probate action, pursuant to A.R.S. § 14–371 et seq. The trial judge refused to submit the case to the jury after the close of the contestant's case and granted the contestee's motion for a directed verdict. The contestant, Edgar M. Pohndorf, the adopted son of deceased, Bessie Pohndorf, appeals from an order granting the motion for a directed verdict. The appellant attacked the will in the lower court alleging undue influence, incapacity to make a will and improper execution of the will. Appellant presents the following questions for review:

"A. Does the testimony concerning the *execution* of the will admitted to probate present a question that should have been submitted?

B. Are all of the wills taken together, all of the other evidence and all of the inferences that may be drawn therefrom capable of raising a question as to the validity of the will sufficient to require a trial court to have submitted this matter to the jury?

C. Do the undisputed facts surrounding the $10,000.00 check to testator's "niece" raise an issue as to whether testator had sufficient mind and memory to intelligently understand the nature of the business in which she was engaged to comprehend generally the nature and extent of property which constituted her estate and which she intends to dispose of and to recollect the object of her bounty?"

Viewing the evidence in the light most favorable to the appellant we find that the deceased, Bessie Pohndorf, died in Phoenix, Arizona, on September 6, 1966, at the age of 82 years. She was survived by her adopted son, Edgar Pohndorf, who is the contestant-appellant in this case. At the time of her death, Bessie Pohndorf, was of the Jewish faith and had always been of that faith since birth. After the death of her husband, difficulties arose between the deceased and appellant. She told him that she was not going to leave him anything in her will because she had already given him enough during her lifetime. The testatrix and her husband had in fact, made gifts of substantial amounts of money to the appellant during their lifetimes. Prior to executing the will in question the testatrix had executed at least three other wills. She had also made statements to various people that she did not like appellant because he did not like Jews. Approximately eighteen months prior to executing the will which is at issue the testatrix gave Pearl Schultz, a grandniece, and her husband the sum of $10,000.00. The mother of Pearl Schultz' father and the testatrix were sisters. When Pearl Schultz was young, the testatrix had wanted Pearl to come and live with her. Pearl's mother was afraid that the deceased might try to adopt her and

refused to allow Pearl to go with the testatrix. The testatrix gave the $10,000.00 to Pearl as Pearl's "rightful share" explaining that she was going to divulge something to her that she had never divulged to anyone, namely, that there had been a sister of the testatrix named Linda who had migrated with the testatrix to the United States; that Linda had married a man who had dealt with furs or holdings in Alaska and that Linda had passed away; that Linda had no children and when she died the testatrix took care of the burial and had the body sent to Seattle; that she took care of all of Linda's estate and that actually Pearl's father was a nephew to Linda and was rightfully entitled to an inheritance from this estate which he never received.

The attesting witnesses stated that the testatrix could write her name and read figures but there is some question as to whether or not she could actually read English. Prior to execution and attestation by the witnesses, the will was read aloud to her by her attorney. The attorney explained to her the meaning of various provisions of the will and the will was signed by her in her own hand. At the time she signed the will she did not appear to be in fear of anyone or acting under the influence of anybody. She seemed to be well-oriented with respect to her surroundings and what she wanted and what she wanted to do.

The attorney who prepared the will did not recall whether the deceased knew the value of her estate. Appellant and his wife testified that they couldn't understand why the testatrix disliked them and that if she did, such dislike was entirely unfounded.

The testatrix bequeathed the sum of $1,000.00 to appellant and bequeathed the rest of the estate to a Hebrew school, and to friends and relatives who came to the United States from the same village in Russia from which she came.

In a will contest, filed after the admission of the will to probate, it is not

necessary for the proponent of the will to repeat the showing of due execution and the burden of proving improper execution is upon the contestant. In re Hesse's Estate, 62 Ariz. 273, 157 P.2d 347 (1945). The defendant is under no obligation to submit any evidence until the plaintiff has produced some evidence legally sufficient to support his allegations. In re Hesse's Estate, supra.

■ Appellant's main attack on the execution of the will is that the evidence showed that the testatrix was unable to read English. However, the uncontradicted testimony is that the attorney read the will to her before she signed it. The courts do not require any educational standards of testators and even an illiterate person may make a will. Atkinson on Wills, § 53 (2d ed.); 94 C.J.S. Wills § 16. We do not believe that the inability to read English invalidated the will in this case.

■ The fact that the testatrix disliked the appellant because she thought that appellant hated Jews is not indicative of an inability to make the will. The mere fact that a person may dislike a relative, with or without reason, is not evidence of insanity. Estate of Greene, 40 Ariz. 274, 11 P.2d 947 (1932).

■ The person attacking the will must produce evidence that one or more of the necessary elements of testamentary capacity were missing at the time the will was executed. Our Supreme Court has stated that the test is as follows:

"* * * (1) Did she at the time she executed the will, understand the nature of the act she was doing? (2) The nature or character of her property? (3) Her relation to the persons who had claims upon her bounty and whose interests are affected by the terms of the instrument?" In re O'Connor's Estate, 74 Ariz. 248, 259, 246 P.2d 1063, 1070 (1952).

None of the witnesses testified to any facts which would impugn the ability of the testatrix to execute the will. What appellant is really asking us to do is to disbelieve his own witnesses. This we are not inclined to do.

■ Admitting the truth of the evidence introduced by the appellant, including reasonable inferences to be drawn therefrom, we believe the trial court was correct in granting the motion for a directed verdict. Higgins v. Kittleson, 1 Ariz.App. 244, 401 P.2d 412 (1965); Han v. Horwitz, 2 Ariz.App. 245, 407 P.2d 786 (1965).

The judgment is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.