539 P.2d 529

**John F. HENDRICKS and Cheryl Dawn Hendricks, husband and wife, Appellants,**

v.

**William SIMPER and Trina Simper, husband and wife, and Austin Simper and Jane Doe Simper, husband and wife, Appellees.**

No. l CA–CIV 2621.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 19, 1975.

Chard & Karasek, Ltd. by Robert A. Chard and David J. Karasek, Phoenix, for appellants.

Johnson, Tucker, Jessen & Drake, P.A. by Michael M. Johnson, Phoenix, for appellees.

## OPINION

HAIRE, Chief Judge.

On this appeal we are required to determine whether the trial judge erred in directing a verdict for the defendants (appellees). The sole issue at trial concerned the validity of a release which had been executed by the plaintiffs. The facts show that on November 25, 1969, plaintiff, John F. Hendricks, was injured while riding a horse near Holbrook, Arizona. The horse was owned by Austin Simper, who was insured by Farmers Insurance Group. After sustaining his injuries, Mr. Hendricks was transferred to Good Samaritan Hospital in Phoenix, Arizona. While a patient in the hospital, Mr. Hendricks and his wife, Cheryl Hendricks, signed a release dated December 11, 1969, upon the receipt of a draft from Farmers Insurance Group in the sum of $2500.00.

The release provided as follows:

"For and in consideration of the sum of $Two Thousand Five Hundred and 00/100 $(2,500.00) receipt of which is acknowledged, I release and forever dis-

charge Austin Simper and William Simper their principals, agents, representatives and insurance carriers from any and all rights, claims, demands and damages of any kind, known or unknown, existing or arising in the future, resulting from or related personal injuries death or property damage, arising from an accident that occurred on or about the 25 day of November, 1969, at or near Holbrook, Arizona.

"I understand that this is a compromise settlement of all my claims of every nature and kind whatsoever arising out of the accident referred to above, but is not an admission of liability. I understand that this is all the money or consideration I will receive from the above described parties as a result of this accident. I have read this release and understand it."

Approximately ten days later, after Mr. Hendricks had been released from the hospital, both he and Mrs. Hendricks endorsed the $2500 draft, which contained the following release language printed immediately above their endorsements:

"Endorsement of this draft constitutes a release of all claims, known or unknown, the undersigned has or may have against the payor and any other person on account of any and all claims arising out of the loss referred to on the face hereof."

It was plaintiffs' theory that the release was invalid and should be set aside because:

1. John Hendricks was mentally incompetent to execute a release on December 11, 1969, and therefore the release was ineffective as a contract.

2. The release was invalid under the principles established in *Dansby v. Buck*, 92 Ariz. 1, 373 P.2d 1 (1962), because it was based on a mutual or unilateral mistake of the parties.

3. The release was invalid because it was induced by the actual or constructive fraud of the defendants' agent.

Additional facts pertinent to each of these contentions will be set forth in our discussion of plaintiffs' argument.

■ Initially, we note that when reviewing the granting of a motion for a directed verdict, we must consider the evidence and reasonable inferences therefrom in a light most favorable to the opposing party, *Tanner v. Levie*, 105 Ariz. 149, 460 P.2d 995 (1969). Moreover, the court cannot weigh the evidence when passing upon the propriety of such a motion, *Cano v. Neill*, 12 Ariz.App. 562, 473 P.2d 487 (1970). The test, as stated by the Arizona Supreme Court in *Davis v. Weber*, 93 Ariz. 312, 380 P.2d 608 (1963), is:

"A defendant's motion for a directed verdict admits the truth of whatever evidence the opposing party has introduced and any inferences reasonably drawn therefrom. [Citation omitted]. On such a motion the evidence must be treated and viewed in a light most favorable to the party against whom the motion is sought. [Citation omitted]. The motion should be granted only where the evidence is not sufficient to support a contrary verdict or so weak that a court would feel constrained to set aside such a verdict on a motion for new trial." 93 Ariz. at 314–15, 380 P.2d at 609.

Applying these principles, we conclude that the trial judge correctly granted the defendants' motion for directed verdict.

I.

## COMPETENCY TO EXECUTE THE RELEASE

■ Plaintiffs' contentions in this regard are somewhat elusive inasmuch as plaintiffs have not set forth in their brief any authority or any standard against which to measure the evidence concerning Mr. Hendricks' competency to contract. Generally they point out that Mr. Hendricks was afflicted with worries stemming from his personal and financial difficulties, pain resulting from his injuries, and that he was taking medication to relieve his

physical discomfort. No such contentions are made as to Mrs. Hendricks, who also executed the release. We find the evidence in this regard completely insufficient to establish a prima facie case which would justify submission of the competency issue to the jury. The standard against which the evidence must be measured is whether, under all the circumstances, a person's mental abilities have been so affected as to render him incapable of understanding the nature and consequences of his acts, that is, unable to understand the character of the transaction in question. *Cundick v. Broadbent,* 383 F.2d 157 (10th Cir. 1967); *Wood v. Dunlop,* 8 Wash.App. 957, 510 P.2d 260 (1973); See generally: 41 Am.Jur.2d, Incompetent Persons, § 71. Although we find no Arizona decisions directly in point dealing with competency in an ordinary contractual situation, substantially this same standard has been applied in questions dealing with the competency of a grantor when the validity of a deed is questioned. Thus, in *Pass v. Stephens,* 22 Ariz. 461, 198 P. 712 (1921) the Arizona Supreme Court stated:

> "It is well settled that mere mental weakness in the grantor does not invalidate a deed. To have that effect the mental power must be so far deteriorated or destroyed that the grantor is incapable of understanding in a reasonable degree and knowing the consequences of the instrument he executes." 22 Ariz. at 470, 198 P. at 715.

*See also, Stewart v. Woodruff,* 19 Ariz. App. 190, 505 P.2d 1081 (1973); *Young v. Lujan,* 11 Ariz.App. 47, 461 P.2d 691 (1969).

■ One asserting the invalidity of a contract on the grounds of incompetency has a burden of showing such incompetency by clear and convincing evidence. *Stewart v. Woodruff, supra.* Evidence of a party's worries is insufficient. *Carrillo v. Murray & Layne Co.,* 25 Ariz. 303, 216 P. 689 (1923). Both of the medical experts' testimony indicated that the pain endured by Mr. Hendricks would not be a significant factor in his mental processes at the time the release was executed. Although considerable evidence was presented concerning medications given to Mr. Hendricks while he was in the hospital, there is no evidence that any medication received by him rendered him incapable of understanding the nature of the transaction at the time of the execution of the release. In fact, all the evidence is to the contrary. The court had the benefit of a tape recording of the insurance agent's interview with Mr. Hendricks recorded at the time in question. From Mr. Hendricks' answers, it is abundantly clear that he knew and understood exactly what was going on and clearly assented thereto. In addition, some ten days later, he endorsed the draft which again set forth the release provisions. Under these circumstances it would have been error for the trial judge to submit the competency issue to the jury.

## II.

## WAS THE RELEASE INVALID BECAUSE OF MUTUAL OR UNILATERAL MISTAKE?

■ Appellants contend that the release should be rescinded because of mutual mistake "founded upon the lack of knowledge of the parties regarding the medical and hospital bills incurred and the actual injuries of the plaintiffs." Admittedly, and necessarily, at the time the release was entered into neither of the parties were endowed with such foresight as to know at that time exactly what the amount of plaintiffs' final damages would be. However, neither party purported to know the amount of these damages, nor was there any representation made by defendants' agent to Mr. Hendricks concerning this amount. Therefore, we fail to see any legal basis for rescission on such claimed lack of knowledge. On the other hand, unlike the facts in *Dansby v. Buck, supra,* the parties did have a substantially accurate knowledge of the extent of Mr. Hendricks' injuries. Prior to the execu-

tion of the release, Mr. Hendricks advised the insurance company agent concerning the extent of his injuries. Here, there is no contention that there have been unknown consequences of unknown injuries, or even that there have been unknown consequences of known injuries. On the contrary, the evidence shows that although Mr. Hendricks' injuries were substantially as contemplated by the parties, later developments showed that they were actually somewhat less extensive than believed by the parties at the time.

The leading Arizona decision, and the only case authority cited by appellants for their mutual or unilateral mistake rescission theory is *Dansby v. Buck, supra*. Although the reasoning of that decision is not entirely clear, it appears to be based upon a mutual mistake rationale. The facts showed that the consideration for the release was in the specific amount of the damage to the plaintiffs' automobile. When the plaintiff later sued for serious personal injuries, notwithstanding the all-inclusive language of the release (unknown injuries which might thereafter develop), the court held that the release was not a bar, stating:

"We believe the better rule to be that where the parties contract for a release of all claims for known injuries, the release is a bar to recovery for unknown consequences of known injuries, but is not a bar to recovery for unknown injuries not within the contemplation of the parties at the time of contracting for such release; further, that even though a release expressly covers unknown injuries, it is not a bar to an action if it can be shown that such unknown injuries were in existence and were not within the contemplation of the parties when the settlement was agreed upon, but that, if the parties did in fact intentionally agree upon a settlement for unknown injuries, such release will be binding. Whether the parties intended the release to cover unknown injuries is usually a

question of fact." 92 Ariz. at 12, 373 P.2d at 8.

Here, unlike *Dansby v. Buck, supra*, as we have previously stated, there was no evidence of unknown injuries not within the contemplation of the parties, or even of unknown or unexpected consequences of known injuries.

Separate and apart from any mutual mistake theory, appellants contend that the release must be set aside because of the unilateral mistake of Mr. Hendricks. This contention is based upon Mr. Hendricks' claimed subjective belief that, in addition to paying the $2500 specified in the release, the insurance company was going to make other payments, that is, pay his medical and hospital bills. This court recognizes that a unilateral mistake induced by misrepresentations or contractual ambiguity may constitute grounds for avoiding a release. *Balmer v. Gagnon*, 19 Ariz.App. 55, 504 P.2d 1278 (1973). Here there was no evidence of misrepresentations or ambiguity. The recorded conversation surrounding the execution of the release was played to the court and jury and clearly indicated that there was no mistake. The plain wording of the release itself made it clear that no further monies were forthcoming. The release was read to plaintiffs and they were given an opportunity to read it before signing. Both Mr. Hendricks and his wife stated that, although given an opportunity to do so, they signed the document without reading it. We consider their failure to read it immaterial. There is no contention that its terms are not as read to them or that it in any way differs from the oral representations made by the defendants' agent. We agree with the trial court that the wording of the release leaves no room for an inference that medical bills were to be paid because the term "medical bills" was not specifically mentioned in the release. In the recording of the agent's conversation with Mr. and Mrs. Hendricks taken on December 11, 1969, at the time of the execution of the release, they were

asked: "Is there any doubt in your mind as to the fact that this settlement of $2500 is a total and full amount and there will be no further payments as a result of injuries from the accident?" Mr. Hendricks' answer was: "That is my understanding. That is correct."

We find no support in the record for the rescission of the release based upon unilateral mistake. Likewise, it is apparent from our discussion of plaintiffs' evidence that there is no support for appellants' contentions concerning fraud, either actual or constructive. As we have previously stated, there was no proof that any misrepresentations were made to plaintiffs, nor was there a confidential relationship involved. The appellants completely failed to carry their burden of supporting their contentions by clear and convincing evidence. *Melvin v. Stevens*, 10 Ariz.App. 357, 458 P.2d 977 (1969).

The facts and the law of this case are well summarized by the experienced trial judge's remarks to the jury, explaining his reason for directing a verdict:

"In order to set aside this release the plaintiffs had to establish either that Mr. Hendricks wasn't mentally capable of entering into a release or that through some fraudulent conduct by Mr. Bennion he was induced to sign it. After hearing all the evidence, I can't find that there's any issue as to whether he was mentally capable. It seems to me that the testimony of his own doctor and the recording we heard today all indicate that he was capable of knowing what he was doing and that he was advised that he was getting $2,500 and that's all. That's exactly what the release said: 'Settling for all claims.' So I have made an order directing a verdict in favor of the defendant."

The directed verdict in defendants' favor is affirmed.

JACOBSON, P. J., and EUBANK, J., concur.