617 P.2d 767

**Joe M. CORREA, Richard L. Correa and Socorro C. Correa, Plaintiffs/Appellants,**

v.

**PECOS VALLEY DEVELOPMENT CORPORATION, an Arizona Corporation; John K. Troster and Papago Butte Water Delivery District of Pinal County No. 4, Defendants/Appellees.**

**No. 2 CA–CIV 3220.**

Court of Appeals of Arizona, Division 2.

July 8, 1980.

Rehearing Denied Sept. 5, 1980.

Review Denied Sept. 23, 1980.

**604**

James A. Quisenberry, Casa Grande, for plaintiffs/appellants.

Howard H. Karman, Casa Grande, for defendants/appellees.

HATHAWAY, Chief Judge.

Plaintiffs–appellants, Correa, filed this lawsuit in the Superior Court of Pinal County against appellees, alleging consumer fraud, breach of contract and tort. Also, as to Papago Butte Water Delivery District of Pinal County # 4, they claimed breach of a statutory duty. Appellees–defendants answered and Pecos Valley Development Corporation counterclaimed for taxes paid by it in the sum of $202.91.

At the completion of the plaintiffs' case, the court granted defendants' motion for directed verdict as to all counts. By stipulation, the counterclaim was tried to the court, judgment was granted against appellants and in favor of appellees for the sum of $202.91, plus attorneys' fees and costs. Appellants contend on appeal that the evidence was sufficient to go to the jury, that the court erred in excluding certain evidence and in awarding attorneys' fees. We consider the matters seriatim as presented in appellants' brief, after the following brief statement of the facts.

On February 16, 1974, Richard Correa and his wife, Socorro, purchased from defendant Pecos Valley Development Corporation a 3⅓ acre "mini–farm," lot 6, unit one, in Papago Butte Ranchos, a remote farming area of Pinal County. On March 23, 1975, Richard's father, Joe Correa, purchased a "mini–farm," lot 156, unit 2, in the same subdivision. Written and oral representations were made that the "mini–farms" offered for sale by Pecos Valley Development Corporation would be serviced by an irrigation system to be installed by the developer. The Papago Butte Water Delivery District of Pinal County # 4 was formed by a resolution and order of the

Pinal County Board of Supervisors on July 22, 1974. A water master was appointed whose duties included maintenance of the system and overseeing the irrigation schedule and water deliveries to the property owners.

Richard and Socorro Correa purchased their "mini–farm" at the suggestion of Joe Correa. The Correas had an understanding among themselves that Joe would farm the land and that they would share in the output or profit.

██ This lawsuit arose out of the alleged inadequacies of the irrigation system installed by the developers and the water supplied to the "mini–farms." Although the record is less than crystal clear on this point, a directed verdict admits the truth of all the competent evidence introduced by appellants, including all reasonable inferences to be drawn therefrom, and we must view such evidence most strongly against appellees and in the light most favorable to appellants. *Jackson v. H. H. Robertson Company, Inc.,* 118 Ariz. 29, 574 P.2d 822 (1978); *Byrns v. Riddell, Inc.,* 113 Ariz. 264, 550 P.2d 1065 (1976). We reject appellees' suggestion that appellants' failure to move for a new trial precludes us from considering the sufficiency of the evidence. *McClinton v. Rice,* 76 Ariz. 358, 265 P.2d 425 (1953). In ruling on the motion for a directed verdict, the trial court was called upon to determine whether the plaintiffs had introduced any evidence which would justify a reasonable person returning a verdict for them. Only if no such evidence was introduced was the granting of a directed verdict correct. *Matson v. Naifeh,* 122 Ariz. 360, 595 P.2d 38 (1979); *Han v. Horwitz,* 2 Ariz.App. 245, 407 P.2d 786 (1965).

██ Appellants first contend that there was sufficient evidence to go to the jury on the claim of consumer fraud against Pecos Valley Development Corporation. Their claim is based upon A.R.S. Sec. 44–1522, which applies to specified unlawful practices in connection with the sale or advertisement of merchandise. "Merchandise" is defined to include real estate. A.R.S. Sec.

44–1521(5), as amended. The requisites of a private cause of action for a statutory fraud are a false promise or a misrepresentation made in connection with the sale or advertisement of merchandise and the consumer's consequent and proximate injury. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974). Injury occurs when the consumer relies on the misrepresentation, even though reliance need not be reasonable. *Parks v. Macro–Dynamics, Inc.*, 121 Ariz. 517, 591 P.2d 1005 (App.1979); *Peery v. Hansen*, 120 Ariz. 266, 585 P.2d 574 (App.1978).

The record indicates that the developers represented that there would be sufficient water for farming. The sales literature characterized the land to be sold as "3⅓ Acre Irrigated Mini Farms," showing before and after pictures representing the land transformed through planting and irrigation, producing "lush grazing land" and "sleek cattle grazing in green fields . . . they could be yours.!" The brochure asks, "Have you ever? . . . Wanted to grow trees, or an orchard for a profit? . . . Wanted to raise and board your own horses? . . . Wanted to have your family enjoy the freedom of a small farm? Papago Butte Ranchos offers the opportunity to be independent. On your own 3⅓ acre Mini-Farm you can raise trees or an orchard, have horses or other livestock, gather vegetables from your own garden . . ." The brochure in another section further recounted the profits of ownership through ". . . growing fresh vegetables in your own garden, planting all kinds of fruit trees, raising chickens if you desire, growing feed to raise your own calves, or maybe a milk cow or two, keep horses for your own riding pleasure. All this and much, much more can be yours on you own Mini-Farm at Papago Butte Ranchos." The literature discloses: "Modern planned irrigation system (water to every tract), no wells to drill no pumps to buy."

The representations as to the adequacy of the water supply referred, as the parties knew, to an irrigation system in the process of development. The statute, A.R.S. Sec. 44–1522, distinguishes between concealment, suppression or omission of any material fact, and a false promise. The former applies to pre–existing or present facts while the latter covers events to occur in the future. When the promise is made without a present intent to perform, an action for fraud will lie. *Ahmed v. Collins*, 23 Ariz.App. 54, 530 P.2d 900 (1975). We believe the rationale for this rule is equally applicable to statutory consumer fraud actions.

Here the record shows, from testimony of the water master, that of the 180 lot owners in each unit of Papago Butte Ranchos, only 16 could irrigate their land at any one time. This means that, assuming the system is used 24 hours a day, each lot owner would be able to irrigate once every 5½ days. The water master also testified, from his personal knowledge, that watering every two or three days was required to grow alfalfa, a crop which was already in cultivation on some of the lots when they were sold. The evidence presented by appellants raises a factual issue for the jury to decide: Whether the defendants knew, or should they have known that, even after full performance on their part, the system would not permit frequent enough irrigation to sustain the crops. In addition, the record indicates that appellants offered evidence that appellees and their privies irrigated retained lands from the development water supply while appellants and other lot owners were without sufficient irrigation water. Such evidence presents a further factual issue for the jury as to appellees' intent.

With respect to the breach of contract count, appellants were required to prove a contract, its breach and the resulting damage. *Clark v. Compania Ganadera de Cananea, S.A.*, 95 Ariz. 90, 387 P.2d 235 (1963). The terms of the contract must be established with sufficient specificity that the obligations involved may be ascertained. *Savoca Masonry Company, Inc. v. Holmes and Son Construction Company, Inc.*, 112 Ariz. 392, 542 P.2d 817 (1975).

Here the contract entered into by the parties makes no reference to an irrigation system. However, the property report prepared by the developer and delivered to the purchaser in accordance with the United States Department of Housing and Urban Development requirements, 15 U.S.C. Sec. 1701, et seq., (The HUD Report) does contain a statement that an irrigation water delivery system will be installed. In addition, it should be noted that the contract on its face makes specific reference to the HUD Report. The underlying purpose of requiring that the HUD Report be given to purchasers of subdivided real estate is to ensure that the purchaser is informed of all the facts necessary to the making of an informed decision regarding the purchase. *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98 (5th Cir. 1978). It is clearly the intent that the purchaser rely on the information in the HUD Report when he signs the contract. Oral representations made contemporaneously with the execution of a written contract come within the parol evidence rule. However, here we have a series of statements, caveats, promises, restrictions and covenants made by the developer, reduced to writing by the developer, and delivered to the purchaser at the time the contract is executed. While the Interstate Land Sales Act provides for a statutory remedy, this remedy is not exclusive.[1]

That the purchaser chooses to pursue a common law remedy rather than the statutory one should not, we believe, nullify the intent behind the requirement for the HUD Report, to inform the purchaser, in a manner upon which he can rely, of all the facts concerning the particular real estate. The sole manner in which this can be effectuated is by incorporating the contents of the HUD Report into the contract. Only by this incorporation can the purchaser's reliance be protected. Appellants offered testimony that the irrigation system was inadequate. This presented a fact question for the jury on the breach of contract claim.

The third count of the complaint alleged that Joe Correa's irrigation water was tortiously cut off on lot 156 for failure to pay his water bill when, according to him, he had additional pre–paid irrigations due him. He testified that he had paid in advance, as required, for 18 irrigations. He also testified that each irrigation was to consist of 1 acre foot of water (water depth of 1 foot over an acre or approximately 326,000 gallons). This testimony was uncontradicted. The water master testified that he charged a lot owner for an "irrigation" on the basis of 12 hours for each irrigation. Based on this hourly formula, he determined that Joe Correa had "irrigated" 56 times or 38 more than he had paid for. The quantity of water, in gallons, delivered to a particular lot over a 12 hour period would depend upon the size of the outlet pipe and the amount of pressure at the outlet. The sole testimony equating acre feet of water to a period of time was that, during a test, 1.55 acre feet of water was delivered in a 24–hour period. There was no evidence presented to indicate whether, when the test was conducted, no other water was being drawn from the system, thereby affecting the pressure and as a result, the volume of water at the test outlet. What is clear from the testimony is that one 12 hour "irrigation" did not equal one acre foot of water. The water master, who made the determination that Joe Correa had used too much water, testified that he did not know how many gallons were contained in an acre foot nor had he ever checked to determine how much water in gallons per minute would flow in one hour from the outlet pipe serving the individual parcels. It is noted that documents introduced into evidence indicate that the method of measuring water use at Papago Buttes has been changed from acre feet to an hourly basis and the users now pay for an "irrigation" for every 12 hours of use. During the period in question, however, the testimony indicates that there is a factual

1. 15 U.S.C. § 1713.
 "The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity."

question for the jury as to how may acre feet "irrigations" Joe Correa had used at the time his water outlet was capped.

On the first three counts of the complaint, we therefore reverse and remand for a new trial. As to each count, there was sufficient evidence to require submission to the jury. It is the function of the jury to weigh conflicting evidence and inferences and to determine the credibility of witnesses. The court cannot weigh the evidence when passing on the propriety of a motion for a directed verdict. *Hendricks v. Simper*, 24 Ariz.App. 415, 539 P.2d 529 (1975); *Shafer v. Mountain States Telephone and Telegraph Company*, 335 F.2d 932 (9th Cir. 1964).

On the final count of the complaint, appellants sought to recover damages for the alleged delivery, without reimbursement, of water by the Water Delivery District in violation of A.R.S. Sec. 45–1939 which provides:

> "A district may contract to provide irrigation service to lands not included within the district, at charges which shall be not less and on terms not more favorable than for similar service to district lands, including all overhead expenses and costs provided for by taxation and otherwise."

Recovery for an illegal act in violation of the statute should accrue to the benefit of all landowner members of the Water Delivery District.

Water delivery districts are organized and established for the economic benefit of the landowners of the district and the district's relationship with the landowners is the same as that of a corporation to its shareholders. In this regard, if the district, as alleged here, violates the statute and refuses to take action for reimbursement, a landowner or group of landowners can bring a derivative suit in the name of the district against the party who allegedly received the water. Here suit was brought by individual landowners to recover for the alleged violation; however, it was not brought in the name of the district against the third party but was brought against the district. The directed verdict in favor of the Water Delivery District on Count Four of the complaint was correct, even though it was granted for the wrong reason. *Chavez v. Tolleson Elementary School District*, 122 Ariz. 472, 595 P.2d 1017 (App.1979).

The second issue raised in this appeal is the correctness of the trial court's exclusion of testimony from other landowners in Papago Buttes concerning irrigation water problems. The court ruled that such testimony was irrelevant and immaterial until appellants had presented sufficient evidence to allow the jury to consider the consumer fraud count. Based on what we have said, supra, concerning the sufficiency of the evidence to require a jury determination on this count, the trial court's ruling is reversed. However, in addition, it should be noted that the court's ruling was too restrictive in that appellants were required to show a violation of the consumer fraud statute before they could introduce evidence which, if accepted by the jury, would tend to prove that very violation. In an action for fraud, similar fraudulent representations to other persons may be received upon the issue of defendant's intent or motive and upon his "scienter," i. e., knowledge that the representations were false. *Karsun v. Kelley*, 258 Or. 155, 482 P.2d 533 (1971); *Cooper v. Eastern Airlines, Inc.*, 90 Misc.2d 52, 393 N.Y.S.2d 306 (1977). In addition, the testimony of the other landowners would be highly relevant and material to the issue of the adequacy of the irrigation system. *State v. Kennedy*, 122 Ariz. 22, 592 P.2d 1288 (App.1979); 17A A.R.S., Rules of Evidence, rule 401. For the same reason, we believe that the documentary evidence, for which an offer of proof was made, should have been admitted.

The final issue concerns the award of attorneys' fees under A.R.S. Sec. 12–341.01 to Pecos Valley Development Corporation as the successful party on Count Two, the contract action. In view of our reversal on this count, we reverse as to the allowance of attorneys' fees.

Affirmed in part, reversed in part and remanded for a new trial.

RICHMOND, J., concurs.

HOWARD, Judge, specially concurring.

I concur in the result. I believe the evidence shows common law fraud but I still cannot agree that one has a private cause of action for consumer fraud. See my concurring opinion in *Peery v. Hansen*, supra.