No. 46,540

STATE OF KANSAS, *Appellee,* v. DANNY McCOLLUM, *Appellant.*

(496 P. 2d 1381)

Opinion filed May 6, 1972.

*Charles D. Green,* of Arthur, Green & Arthur, of Manhattan, argued the cause and was on the brief for appellant.

*William A. Walsh,* county attorney, was on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: The appellant, Danny McCollum, was convicted by a jury of selling, offering for sale, or having in his possession with the intent to sell d-lysergic acid diethylamide (LSD) in violation of K. S. A. 1971 Supp. 65-2602 (8).

The appellant was 18 years of age and a senior at Manhattan High School. He was employed at Wharton Manor, Manhattan, Kansas. On August 1, 1970, while he was at work, the appellant was visited by a friend who lived with his parents in Concordia, one Dan Bowersox. Bowersox had purchased fifty tablets of LSD in Manhattan that day and told the appellant of his intention to sell them that night in Concordia. Bowersox asked the appellant to come and see him. Early that evening McCollum and one Jim Strouse drove to Concordia in McCollum's Volkswagen to visit Bowersox.

After paying a social visit to the home of Bowersox and his parents, the appellant, Bowersox, Strouse, and one John Delahantey, who owned a one-fourth interest in the LSD with Bowersox, drove to downtown Concordia in the appellant's car to eat supper. Afterwards, and about 9:00 p. m., they drove to the Broadway Bar. McCollum parked the Volkswagen across the street from the bar, and Bowersox and Delahantey remained in the car. McCollum went into the bar where he met one Patrick Deal. McCollum had previously met Deal, and he asked Deal if he wanted to purchase some LSD. Deal said he would have to see, and left the bar. Deal then telephoned the substance of McCollum's conversation to Loren Kasper, Cloud County undersheriff.

Undersheriff Kasper requested that Deal permit two other young men, Steve Bender and Douglas Dunn, to accompany him to the Broadway Bar and attempt to purchase some of the LSD offered by the appellant. Bender was given two marked $10 bills to purchase the LSD if an agreement was reached.

Bender and Dunn went into the Broadway Bar pursuant to the undersheriff's instructions and remained there about five minutes. Deal came into the bar and the three went outside where they met McCollum. The four of them then walked across the street and gathered near a dock in front of the Bowman Seed Company building. Bender and the appellant sat on the loading dock while Bowersox and Delahantey remained in the appellant's car which was parked in front of the Bowman Seed Company building. The ap-

pellant talked to Bender for about ten minutes negotiating a price. The appellant wanted $3 per tablet. Bender wanted more than seven tablets for the $20. At the conclusion of the conversation, Bender talked briefly to Bowersox, and an agreement was reached to sell eight tablets for $20. Bowersox then gave eight tablets to Bender, and Bender took the two $10 bills from his pocket and gave them to the appellant. Bender and his companions left the area and returned to the Concordia police station with the evidence. The appellant later gave the $20 to Bowersox. The time would have been between 11:30 p. m. and 12:00 midnight.

Early in the morning of August 2, 1970, Undersheriff Kasper arrested the appellant and the other young men in the Volkswagen. The appellant was searched at the scene of the arrest. No drugs or currency were found on his person or in his automobile. The two marked $10 bills were found in Bowersox' shirt pocket. The eight tablets received by Bender had been turned over to Kasper prior to the appellant's arrest.

The appellant first contends the district court erred in failing to grant a continuance on the morning of the trial in order that a preliminary hearing could be held, notwithstanding the fact the request came nearly five months after his arrest and after he had voluntarily waived his right to a preliminary hearing. In making the contention, the appellant concedes that whether a continuance should be granted in any given case is within the discretion of the district court (*State v. Neil,* 203 Kan. 473, 454 P. 2d 136), and further, that a defendant may waive his right to a preliminary hearing. (K. S. A. 1971 Supp. 22-2902.)

In support of his contention, the appellant directs attention that his case was set for trial on the morning of January 13, 1971, and that about a week prior, the county attorney filed an amended Information charging the offense of which he was convicted. Also, that on January 6, 1972, the county attorney filed and served upon the appellant's counsel of record, a motion to endorse the name of Patrick Deal upon the Information as a witness for the state. The motion was allowed by the district court on January 13.

While the record does not indicate the date the appellant waived his right to a preliminary hearing, it does show the county attorney explained to the appellant and his parents the purpose of and his right to a preliminary hearing, and it further shows that when the appellant and his parents were present in the Cloud County court-

room on the day set for the preliminary hearing, the judge of the county court fully apprised each of them of the appellant's right to a preliminary hearing and the effect of a waiver of such a hearing. After the appellant and his parents were so advised, and upon the advice of his father, the appellant voluntarily waived his right to a preliminary hearing. Although the judge of the county court did not appoint counsel to represent the appellant at that time, the record shows that after the appellant waived his right to a preliminary hearing, both he and his father expressed a desire to proceed to the district court where the appellant would enter a plea of guilty to the charge alleged against him. The county attorney cautioned both the father and the appellant that the district court would not accept a plea of guilty unless counsel was employed or appointed to represent the appellant in the district court, and suggested they contact Mr. Robert Viets, of Concordia, to represent him. Charles D. Green, of Manhattan, did not become associated with Mr. Viets until approximately two weeks prior to trial.

We think the district court did not err in denying the continuance. It has been consistently held that the granting or refusal of a continuance is largely within the discretion of the district court, and will not be disturbed on appeal in the absence of clear abuse of that discretion. In the instant case, the appellant had voluntarily waived his right to a preliminary hearing. That being the case, such a hearing was not required and a continuance would serve no useful purpose. (*State v. Callison*, 119 Kan. 532, 240 Pac. 850; *State v. Caton*, 134 Kan. 128, 4 P. 2d 677; *State v. Latham & York*, 190 Kan. 411, 375 P. 2d 788, cert. den. 373 U. S. 919, 10 L. Ed. 2d 418, 83 S. Ct. 1310; *State v. Dickson*, 198 Kan. 219, 424 P. 2d 274; *State v. Neil*, supra; *State v. Watson*, 204 Kan. 681, 466 P. 2d 296; *State v. Hill*, 207 Kan. 714, 486 P. 2d 1398.) Moreover, the state's motion to endorse the name of Patrick Deal on the Information was to forestall any anticipated defense of entrapment. The appellant concedes this point, and in denying the motion, the district court pointed out that counsel had notice of the motion at least one week before trial, and it assumed diligent counsel would investigate the witness when he knew or had reason to believe Deal might be called as a witness in the case. Permission to endorse the name of an additional witness upon an Information is a matter within the judicial discretion of the district court. Under the circumstances, we conclude the district court did not abuse its discretion in this case.

(*State v. Law*, 203 Kan. 89, 452 P. 2d 862; *State v. Hill*, supra; 2 Hatcher's Kansas Digest [Rev. Ed.], Criminal Law, § 77.)

The appellant next contends the district court erred in admitting into evidence the bottle containing the remaining LSD tablets because the state failed to establish a chain of custody of the tablets. The tablets were taken by Bender to the undersheriff. Kasper placed them in a plastic bottle and kept them in his custody until August 6, 1970, when he mailed the bottle and contents by certified mail, return receipt requested, to the Kansas Bureau of Investigation Laboratory in Topeka. The bottle and contents was received by the KBI on August 7, and the return receipt therefor was acknowledged by Jean Mulligan, an employee at KBI. Kasper received the return receipt at Concordia, which was state's Exhibit "D."

W. S. Cowan, Laboratory Supervisor for the KBI, testified that on the morning of August 7, 1970, he received a registered package from the sheriff's office in Concordia at the KBI mail room; that he opened the package, read the transmittal letter, and performed proper police procedures concerning a custody receipt; obtained a file number for the evidence; initialed the plastic bottle containing the tablets on August 7, and took the bottle and contents to the Board of Health Laboratories in Topeka, where the evidence was signed for by Elaine Burnau and Dr. Glendening of that laboratory. Later, Cowan went to the Board of Health Laboratory and obtained the plastic bottle containing the tablets from Dr. Glendening, and gave him a receipt for the evidence. Cowan then took the evidence to the KBI office, put it in the evidence room, and kept it under lock and key where it remained until he brought it to Concordia for the trial.

Elaine Burnau, Laboratory Technician, testified the bottle containing the tablets was given a number at the Board of Health Laboratory, and was placed in the security cabinet in her presence by Dr. Glendening, her supervisor. The cabinet is accessible to Glendening and Mrs. Shepek who also is employed at the laboratory. On August 12, 1972, Dr. Glendening opened the cabinet for Burnau and she ran a series of tests on one of the tablets. The tests confirmed the presence of LSD. After the analysis was completed, the bottle and the unused tablets were returned to the security cabinet. Cowan returned for the bottle and obtained it and the tablets from Dr. Glendening.

At this point, the plastic bottle containing the tablets was marked state's Exhibit "E," and admitted into evidence over the appellant's objection.

In contending the state's evidence lacked a complete chain of custody, counsel suggests that either one of two things should have been shown by the state's evidence; one, testimony of Jean Mulligan should have been secured indicating she was the party who signed the receipt, Exhibit "D", and that she delivered the package to Cowan, or two, that Kasper should have testified state's Exhibit "E" was in fact the bottle and tablets which he mailed to the KBI Laboratory. The point is not well taken.

The admissibility of evidence of a physical character is to be determined by the district court on the basis of its relevancy and connection to the case. In order to justify admission, the district court must be satisfied of the chain of custody and that the identity of the object is established. Although admissibility in the first instance rests within the sound discretion of the district court, the relevancy and identity of that object are an issue of fact to be presented to the jury. (*State v. Robinson*, 203 Kan. 304, 454 P. 2d 527; 2 Wharton's Criminal Evidence [11th Ed.], § 761, pp. 1290, 1292.)

The jury found the appellant guilty, and this court cannot conclude from the facts and circumstances that the district court erred in admitting the evidence, particularly when the appellant himself conceded on the witness stand the tablets were those given to Bender by Bowersox on August 1, 1970:

"Q. Let me ask you this, Hap. Do you admit that the contents of Exhibit E amount to LSD?

"MR. GREEN: Excuse me, if the Court please, there hasn't been any testimony to the effect that these were analyzed except the one taken out. We will stipulate LSD is a dangerous drug.

"MR. WALSH: I'm only asking the defendant if he will admit the contents of this Exhibit E are LSD.

"THE COURT: Overruled.

"A. Yes, I guess.

"Q. You also admit that these are the pills that were given by Dan Bowersox to Steven Bender on August 1, 1970?

"A. I guess. They look like them.

"Q. You would admit that?

"A. Yes."

The district court did not abuse its discretion in admitting the tablets.

Lastly, the appellant contends there was no substantial, competent evidence to show that he had sold, offered to sell, or possessed with the intent to sell LSD as charged in the information. When considering the sufficiency of evidence to sustain conviction of a crime, the function of this court is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt. *(State v. Brizendine,* 114 Kan. 699, 220 Pac. 174; *State v. Murphy,* 145 Kan. 242, 65 P. 2d 342; *State v. Gregory,* 191 Kan. 687, 383 P. 2d 965; *State v. Hale,* 207 Kan. 446, 485 P. 2d 1338.) This court is of the opinion the test was met in this case. The facts previously related require no repetition. Suffice it to say the facts reasonably infer the appellant and his friend, Bowersox, were at the Broadway Bar for the purpose of selling LSD and in fact consummated a sale. The appellant was the negotiator, and having agreed upon a price, the proceeds were paid over to him. It cannot now be said the appellant did not sell or offer for sale LSD regardless of his denials and selfserving testimony. His explanation was not believed by the jury.

The judgment is affirmed.