No. 47,827

State of Kansas, *Appellee*, v. Ronald D. Watkins, *Appellant.*

(547 P. 2d 810)

82

Opinion filed March 6, 1976.

*Charles E. Worden,* of Topeka, argued the cause and was on the brief for the appellant.

*Donald P. Morrison,* assistant district attorney, argued the cause, and *Gene M. Olander,* district attorney, and *Curt T. Schneider,* attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: Defendant-appellant, Ronald D. Watkins, appeals from his jury conviction of one count of murder in the first degree (K. S. A. 21-3401), one count of robbery (K. S. A. 21-3426), and one count of burglary (K. S. A. 21-3715). Twelve points of error are raised as grounds for reversing the judgment of the lower court denying a new trial.

The evidence introduced on behalf of the state revealed the following: On July 4, 1973, the body of Flora Baxter was discovered in her apartment at 301 Van Buren, Topeka, Kansas. The police were immediately summoned to the scene, whereupon an extensive examination of the premises was conducted. The deceased, a seventy-seven-year-old retired school teacher, was found lying on her back on her bed with her hands and feet tied with an electrical cord. She was gagged with a white cloth pillowcase and had a small dish towel tied around her neck. There were numerous marks and bruises around her head and face. Her purse was found underneath a pillow on her bed and near the purse the police found an empty social security check envelope and an empty welfare check envelope, both postmarked July 2, 1973. There was a pillow lying on the floor near the head of the bed with blood stains on it and the deceased's dentures with blood stains on them were at the foot of the bed. There was a small blood spot on the wall directly above where the dentures were found. The strap from her billfold was discovered under her body, but her billfold was missing and no money or checks were found in the apartment. The police also found an open pack of Chesterfield cigarettes in the apartment although there was testimony that the deceased did not smoke. It was the opinion of the coroner that the beating of the deceased would have been severe enough to render a person un-

conscious but not sufficient to cause death. He concluded that death resulted from asphyxiation.

From the undisputed testimony of various witnesses it was established that on July 3, 1973, the day before her body was discovered, Mrs. Baxter had received her social security and welfare checks in the mail. She cashed both checks at the bank the same day for a total amount of $155.50. She then went to a grocery store and purchased $12.90 worth of food and returned to her apartment at approximately 1:30 p. m.

The evidence further disclosed the defendant lived next door to Mrs. Baxter. At approximately 1:30 p. m. that day he saw Mrs. Baxter return from the store and he told a neighbor, William Hundley, that he was going over to help her with her groceries. The evidence indicated that Mrs. Baxter did not appreciate defendant's help and had refused it in the past. Hundley testified he gave defendant an open pack of Chesterfield cigarettes before he left. Defendant returned about an hour later with a sack of groceries and some money in his hip pocket.

At trial, several witnesses testified that prior to the afternoon of July 3, defendant repeatedly tried to borrow money from his friends. After he returned from Mrs. Baxter's apartment, he repaid past debts, paid his rent, and bought groceries and beer for his friends. In all, defendant spent $76.00 that day and he had $38.00 left over on July 4.

Defendant continued to reside at the same apartment for several days after the homicide. On July 14, the detectives investigating the crime found Mrs. Baxter's empty billfold lying in the chimney of the apartment house. The position of the billfold indicated it was dropped from the top of the chimney. There was testimony that defendant had been seen on the roof after the homicide.

Defendant was further implicated by various statements attributed to him. Charles Hundley testified that on July 1, defendant said to him with respect to Mrs. Baxter, "If that old woman's got any money I would go over and rip her off." Robin Clark testified defendant told her he killed Mrs. Baxter. Julius Brown testified defendant admitted to him that he had killed both Mrs. Baxter and a man whose body was found in a quarry in North Topeka.

Defendant also gave three separate statements to the police. On July 6, 1973, he gave a statement as to where he obtained some of the money, which conflicted with the testimony of other witnesses. On July 7, he made further conflicting statements as to the source

of his funds. Finally, on July 17, he gave a lengthy statement to the police. At first, defendant made various inconsistent statements which conflicted with testimony of other witnesses, then he confessed that he went to Mrs. Baxter's apartment on July 3 and robbed her. He admitted that he gagged and tied her and threw her billfold down the chimney; however, he did not admit having killed her. He stated she was alive when he left her apartment and that he did not beat her.

At trial, defendant claimed he was coerced by Charles Hundley into giving the confession, and that Hundley threatened to kill him if he did not confess. The state proceeded on the theory defendant would not have continued to reside next door if he had left Mrs. Baxter alive after robbing her.

Turning to the points raised on appeal, defendant first contends the trial court erred in overruling his motion to conduct a hearing to determine the admissibility of the results of a polygraph examination given to him. We have held on numerous occasions that in the absence of a stipulation the results of a polygraph examination are not admissible in evidence. (*State v. Lassley,* 218 Kan. 758, 545 P. 2d 383; *State v. Lowry,* 163 Kan. 622, 185 P. 2d 147.) There was no stipulation among the parties as to the admissibility of the test results. Defendant claims he made a proffer that he would show through expert witnesses that techniques have advanced and the polygraph examination is now a reliable scientific test. The state, however, does not recall any such proffer. Under Supreme Court Rule 6 (*c*) any party to an appeal may require testimony in question and answer form to be substituted for that portion of the narrative statement to which it objects. The record contains an objection by the state to defendant's narrative statement of the proffered evidence allegedly offered at the hearing on the admissibility of the polygraph examination, and since defendant did not set out the alleged proffer as it was transcribed we cannot consider his narrative account of the proffer. In the absence of a properly recorded proffer, a party may not assert error due to the erroneous exclusion of such evidence (K. S. A. 60-405; *State v. Nix,* 215 Kan. 880, 529 P. 2d 147; *Salem v. Salem,* 214 Kan. 828, 522 P. 2d 336), and we cannot assign as error the trial court's failure to hold a hearing on the admissibility of the polygraph examination. We note that if a properly recorded proffer had been made and the contents thereof disclosed substance justifying further inquiry, the court should have provided an out-of-court hearing. If this were

not true, a litigant would never have an opportunity to demonstrate progress in the field of scientific examinations.

Defendant next contends the trial court erred in permitting the prosecution to cross-examine him on subjects not touched upon in his direct examination. On direct examination defendant testified that the incriminating statement given by him on July 17, 1973, was the result of coercion. He claimed an acquaintance, Charles Hundley, told him if he did not confess he "wouldn't live to walk the streets of Topeka again." On the basis of this statement, the state, over objection by defendant, was allowed to cross-examine defendant as to the inconsistencies in his previous statements for the purpose of impeaching his credibility. Defendant contends many of the questions asked by the state were not relevant to the voluntariness of the statement, which was the only issue raised by his direct testimony. Defendant concedes the state had the right to examine him with regard to that part of the incriminating statement which was inconsistent with his testimony on direct examination, but he argues the state had no right to question him concerning other parts of the statement which had nothing to do with the issue of whether it was voluntarily given.

The state seeks to justify its line of questioning on the ground, among others, that it was proper to show the inconsistencies in defendant's three separate statements in order to impeach his credibility. It is a familiar rule that cross-examination is generally limited to the scope of direct examination. The extent of cross-examination on the issue of credibility of a witness rests in the sound discretion of the trial court. There must be some showing of abuse of discretion or prejudice to the appealing party before a reversal is justified. (*State v. Ralls,* 213 Kan. 249, 515 P. 2d 1205; *State v. Guffey,* 205 Kan. 9, 468 P. 2d 254.)

After thoroughly examining the entire cross-examination, we cannot say the state exceeded the permissible bounds of cross-examination for the purpose of impeaching the witness. Although portions of the testimony elicited by the questioning were not in direct contradiction of defendant's testimony, we believe that showing the inconsistencies in defendant's statements tended to impeach the credibility of his claim of coercion. For this reason we conclude the trial court correctly allowed the state to question defendant as to the inconsistencies in his statements for the purpose of impeaching his credibility.

In a closely related point defendant contends the trial court erred

in refusing to allow corroborating testimony of his "aunt," Edith Huntsman, concerning a conversation he had with her subsequent to his arrest. When defendant testified on direct examination that he made the incriminating statement of July 17, 1973, due to the threats of Charles Hundley, he also testified he told Mrs. Huntsman of the incident with Hundley during a conversation with her while he was in jail. As previously stated, the state was then permitted to cross-examine defendant for the purpose of impeaching his credibility as to his trial testimony. Upon completion of cross-examination, defendant called Mrs. Huntsman as a witness and a hearing was held outside the presence of the jury to ascertain the substance of her testimony. At that time Mrs. Huntsman indicated she would testify that when she visited defendant in jail on the weekend following his preliminary hearing, he told her the reason he confessed was because of a threat by Charles Hundley. The trial court sustained the state's objection to the testimony as being self-serving.

Defendant argues the testimony of Mrs. Huntsman was admissible. He emphasizes the rule that where a witness has been impeached or his credibility attacked the courts have permitted the admission of prior statements, consistent with his testimony at trial, to rehabilitate or corroborate the witness. Much has been written on this subject and we dealt with it in *State v. Scott*, 210 Kan. 426, 502 P. 2d 753; *State v. Parrish*, 205 Kan. 178, 468 P. 2d 143; and *State v. Fouts*, 169 Kan. 686, 221 P. 2d 841. The rule is also discussed in 81 Am. Jur. 2d, Witnesses, § 641, p. 646. Defendant also claims the proffered testimony was admissible under K. S. A. 60-460 (a), as an exception to the hearsay rule. The issue was given considerably more attention in the briefs of the parties than it deserves. The proffered statement of Mrs. Huntsman had little probative value in the context of this case. At the time Mrs. Huntsman claimed defendant made the statement to her, he was in jail facing a felonious murder charge. What he might say under these circumstances is suspect. Even if admissible we would not overturn this conviction by placing upon it the label of prejudicial error.

Defendant also complains of various comments made by the state in its closing argument. He argues the state's remarks were unprofessional, prejudicial and legally impermissible. The record reveals that two of the remarks were not objected to at trial. The rule is well settled that reversible error cannot be predicated upon a complaint of misconduct of counsel in closing argument where

no objection is lodged. (*State v. Murrell*, 215 Kan. 10, 523 P. 2d 348; *State v. Fleury*, 203 Kan. 888, 457 P. 2d 44; *State v. Johnson*, 210 Kan. 288, 502 P. 2d 802.)

The other statements by the state to which objection was interposed are as follows:

"I am not here trying to justify what Marcia Ross has done. What I know about Marcia Ross I don't like her. She's one of my less favorite people. And I think she probably did, from time to time, encourage others to commit the offense of ripping somebody off. She wasn't disposed to do it. . . .

. . . . . . . . . . . . . .

". . . As to Robin Simmons Clark, she is a substantial problem in this case, isn't she? She's indicated that the defendant committed the crime and then they come in [and] say Robin Simmons Clark is a liar. And yet this liar they put on the witness stand as their witness and they say that Marcia Ross committed the offense. And I am telling you that she was in our office and we asked her specifically, did Marcia Ross ever say that, not only in the morning or the evening, ever say that. No, she said I was capable of doing it. She never said that Marcia Ross never said I killed the old lady or anything to that effect with the exception of saying, I have the capacity. What is Robin Simmons Clark doing in this case? Well, it is unfortunate that she is here at all. I honestly believe she heard the defendant make the statement.

. . . . . . . . . . . . .

"I ask you if this criminal justice process has ever worked, let it work during the course of your deliberations, in the interest of justice, please—"

As to the state's reference to Marcia Ross, the record reveals the trial court agreed with defendant that the comments were outside the scope of the evidence and it immediately admonished the jury to disregard the statement. Improper remarks by a prosecutor in closing arguments will not constitute reversible error where the jury has been instructed to disregard the same unless the remarks were so prejudicial as to be incurable. We do not consider the remarks to be of such a character as to be incurable. (*State v. Jones*, 218 Kan. 720, 545 P. 2d 323.)

Neither can we say the state committed reversible error by commenting on the credibility of the witness Robin Clark or by referring to the "interest of justice" and the "criminal justice process." While misconduct on the part of the prosecutor by going outside the scope of the evidence in the closing argument may entitle an accused to a reversal of his conviction, it must first appear that it was injurious to him and was likely to prejudice the jurors. (*State v. Murrell*, supra.) As viewed by this court, the comments of the state, while improper, were not of such a prejudicial nature as to require a new trial. We find support for this conclusion in the

instructions of the trial court which directed the jury to disregard any statements of counsel beyond the scope of the evidence.

Defendant's next point relates to the admissibility of physical evidence. During the state's case-in-chief, William Zinn testified that on July 2, 1973, he gave the deceased an Eisenhower silver dollar in payment for ironing. Flo Swiger testified that on July 3 she received a silver dollar from defendant while at the Elbow Lounge. She claimed she gave the coin to Donna Jean Strobes the following day. Betty Misegadis testified she saw Flo Swiger give Donna Jean Strobes a silver dollar on July 4. She further testified she was present when Jerry Strobes, Donna's father, recovered the silver dollar from where it had been placed and handed it to a police detective. No silver dollar was found in the deceased's apartment after her body was discovered. Defendant denied having given a silver dollar to Miss Swiger. The state offered the Eisenhower silver dollar as evidence and it was admitted by the trial court as state's Exhibit 19.

Defendant now contends it was error for the trial court to admit the silver dollar into evidence because the chain of custody and identity of the object was not established at trial. The basis for his argument is that the witness Zinn could not identify the silver dollar offered in evidence as the one he gave to the deceased, and the witness Swiger could not state with certainty the silver dollar she gave to the small girl was the one she received from defendant. While the state's evidence of the identification and chain of custody of the silver dollar was questionable, we believe any such deficiency should go to its weight rather than to its admissibility. Although admissibility of physical evidence rests in the first instance within the sound discretion of the trial court, the relevancy and identity of that object are issues of fact to be resolved by the jury. (State v. McCollum, 209 Kan. 498, 496 P. 2d 1381; State v. Robinson, 203 Kan. 304, 454 P. 2d 527.) Here, the testimony of several witnesses established that the deceased was given a silver dollar the day before her death and the defendant gave a silver dollar to a friend on the next day, which was subsequently recovered by the police. Although the significance of such evidence is speculative, it should be permitted to go to the jury for whatever weight might be attached to it. Under these circumstances we cannot say the trial court abused its discretion.

As an additional ground for granting a new trial it is argued the trial court erred in permitting the written and transcribed state-

ments of defendant to physically go to the jury during the course of deliberations without also sending the transcript of defendant's trial testimony to the jury. It does not appear that defendant objected at trial to the submission of the statements to the jury. In a similar situation we held that a defendant waived any supposed irregularity by failing to object to the giving of his statement to the jury. (*State v. Taylor*, 36 Kan. 329, 13 Pac. 550.) Even assuming a proper objection were made, we would not assign error on the part of the trial court. We have stated in the past that as a general rule it is within the discretion of the trial court to send to the jury, at its request, an exhibit which has been received in evidence. (*State v. Stiff*, 148 Kan. 224, 80 P. 2d 1089.) Error will not be predicated on the admission of such evidence in the absence of a showing of an abuse of discretion which resulted in prejudice to the accused. (*State v. Morrison*, 121 Kan. 844, 250 Pac. 333.) On previous occasions we have approved the sending of various exhibits to the jury for consideration during deliberations. In *State v. Morrison*, supra, we said it was not error to permit letters that had been admitted into evidence to go to the jury room. In *State v. Stiff*, supra, we found no error in allowing a diary to go to the jury room.

Defendant's argument on this point is based solely on the holding of this court in *State v. Wilson*, 188 Kan. 67, 360 P. 2d 1092. In that case the trial court permitted the transcript of the trial testimony of the complaining witness to be taken to the jury room during deliberations. We held that by so doing the trial court placed undue emphasis on her testimony, which amounted to prejudicial error. Our decision in *Wilson*, however, was limited to a situation where evidence taken to the jury room was the transcribed testimony of a witness at the trial. The rule of law applicable in such circumstances was stated in Syllabus ¶ 2 of the opinion:

"Under the facts as more fully set forth in the opinion, the sending to the jury room of the transcribed testimony of a witness given at the hearing of a cause on its merits is without precedent and constitutes reversible error."

We do not question the soundness of the rule as applied in *Wilson*, but it is clearly distinguishable from the instant case. Here, we are not dealing with the problem of submitting trial testimony of a witness to the jury. Rather, the objection relates to exhibits of incriminating statements given by defendant prior to trial. A signed confession which has been found by the court to be voluntarily given is one of the strongest forms of physical evidence available to the prosecution. We see no reason to distinguish

between it and any other physical evidence of a concededly damaging nature, such as weapons, instruments of the crime, or photographic evidence which is generally taken to the jury room. On the other hand, by sending a copy of the transcribed trial testimony to the jury room there is the possibility that the jury will place greater emphasis upon it than upon the other trial testimony. (See, *People v. Caldwell*, 39 Ill. 2d 346, 236 N. E. 2d 706, 37 A. L. R. 3d 226 [1968].) On the basis of this reasoning we believe the better rule is to treat a written confession as any other physical exhibit submitted to the jury. This approach is consistent with that taken by many courts which have considered the question. (See, 37 A. L. R. 3d Anno., Taking Confession into Jury Room, p. 238.) We hold, accordingly, the trial court did not abuse its discretion in permitting the written statements of defendant to go to the jury room.

Defendant also claims the trial court committed reversible error by admitting evidence of his two prior convictions without first requiring proof that the offenses were factually similar. During the course of trial, the state offered for admission into evidence two journal entries showing prior offenses committed by defendant. The journal entry marked state's Exhibit 41 was from the district court of Shawnee County and it reflected that on December 14, 1970, defendant entered a plea of guilty to the offense of burglary in violation of K. S. A. 21-3715. The journal entry marked state's Exhibit 42 was from the district court of Jackson County, and it reflected that on November 14, 1968, defendant entered a plea of guilty to the crime of burglary in the second degree as defined by K. S. A. 21-520. Neither journal entry disclosed the facts or circumstances surrounding the nature of the offenses committed by defendant.

At a hearing requested by the state to determine the admissibility of the record of the two prior convictions, defendant objected to its admission on the ground it was incumbent upon the state to show the similarity of the facts and circumstances of the two prior convictions with the offense charged. The state argued evidence of the prior convictions was admissible to show intent, preparation, plan, and knowledge within the meaning of K. S. A. 60-455. It was the position of the state that evidence of the two prior burglary convictions would only be relevant to the offense of aggravated burglary with which defendant was originally charged. To demonstrate the similarity between the prior offenses and the crime

charged, the state pointed to the fact the locality of each of the crimes was in the vicinity of Shawnee County, the offenses were committed within five years of the present charge, the essential statutory elements of the crimes were the same, and all the crimes were burglaries. The state offered no evidence to show the similarities between the prior offenses and the present aggravated burglary charge.

After hearing the arguments of the parties, the trial court ruled the two prior offenses were similar in nature to the present charge and they were admissible to show identity or intent in relation to the aggravated burglary charge. Defendant contends that because of the failure of the state to supply any evidence of the factual surroundings of the prior offenses, the trial court was not in a position to make an informed judgment as to its relevancy and the admission of the record of the prior convictions was reversible error.

The admission of evidence of prior convictions in a criminal case is governed by the provisions of K. S. A. 60-455:

"Subject to section 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to sections 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

To be admissible under this section, evidence of a prior crime must first be shown to be relevant to prove one or more of the material factors of proof specified in the statute. (*State v. Bly,* 215 Kan. 168, 523 P. 2d 397; *State v. Clingerman,* 213 Kan. 525, 516 P. 2d 1022.) The determination of relevancy is a matter left to the discretion of the trial court, based upon some knowledge of the facts, circumstances or nature of the prior offense. (*State v. O'Neal,* 204 Kan. 226, 461 P. 2d 801; *State v. Gunzelman,* 210 Kan. 481, 502 P. 2d 705.) In *Gunzelman,* we stated:

". . . When in the discretion of the court there is a pattern, similarity or connection between the facts surrounding the prior offense and the one with which the accused is presently charged which has relevance in proving specific matters in issue, the prior conviction may then be admitted. . . ." (p. 488.)

The admissibility of evidence of prior offenses is linked by its similarity with the crime charged. As emphasized by this court on numerous occasions, however, relevancy is not the only test to be

applied in determining whether evidence of other crimes has probative value. Probative value consists of more than logical relevancy. Evidence of other crimes has no real probative value if the fact it is supposed to prove is not substantially in issue. (*State v. Bly*, supra; *State v. Davis*, 213 Kan. 54, 515 P. 2d 802.)

In the instant case the admission of the records of the prior burglary convictions was limited by the trial court for the purpose of showing defendant's intent or identity with respect to the aggravated burglary charge. Defendant's criminal intent to commit an aggravated burglary was not substantially in issue in this case. No question was raised as to whether defendant had the necessary intent to burglarize the deceased's apartment. The real issue was the identity of the burglar. Although defendant denied at trial that he burglarized the apartment, the state offered testimony of several witnesses and various incriminating statements by defendant implicating him in the crime. Defendant either entered the apartment and committed a burglary or he did not enter the apartment at all. In either case, the question of defendant's intent was not at issue. Under these circumstances, the admission of evidence of other crimes to prove intent amounts to little more than a showing of defendant's disposition or inclination for bad conduct, which is expressly prohibited by K. S. A. 60-455. We agree with defendant that the evidence of prior crimes was not properly admissible for the purpose of showing intent.

The evidence of prior convictions was also admitted by the trial court for the purpose of proving identity, which we have already noted was a material issue in this case. In the landmark case of *State v. Bly*, supra, decided subsequent to the trial court's decision in the instant case, we discussed the guidelines to be followed when evidence of prior crimes is offered to prove identity:

"Where a similar offense is offered for the purpose of proving *identity*, the evidence should disclose sufficient facts and circumstances of the other offense to raise a reasonable inference that the defendant committed both of the offenses. In other words to show that the same person committed two offenses it is not sufficient simply to show that the offenses were violations of the same or a similar statute. There should be some evidence of the underlying facts showing the manner in which the other offense was committed so as to raise a reasonable inference that the same person committed both offenses. . . ." (p. 177.)

In light of the foregoing principle, we must conclude the trial court erred in admitting the evidence of defendant's prior burglary convictions to prove identity. The journal entries show no more

than the statutory offenses and the punishment imposed. No indication is given as to any of the underlying facts or circumstances of the prior burglaries which might give rise to a reasonable inference that the same person committed all three offenses. From the journal entries alone we cannot tell the manner or means by which the prior burglaries were committed. In the absence of evidence showing a similarity between the prior burglaries and the present charge, the relevancy of the evidence of the prior crimes was not established and should not have been admissible to prove identity.

The only remaining question is whether the admission of evidence of prior crimes constitutes reversible error. Not every erroneous admission of evidence requires a reversal of a conviction. We have stated many times that there is no such thing as a perfect trial, but a defendant is entitled to a fair trial. (*State v. Bly*, supra; *Brown v. United States*, 411 U. S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565.) If error does not affect the substantial rights of the parties it is harmless error. (K. S. A. 60-261.) In accordance with these principles we held in *Bly* that admission of evidence of a subsequent robbery conviction could not have affected the result of the trial and was harmless error. Our holding in that case was based on the overwhelming evidence of the defendant's guilt. Similarly, in the instant case, we believe the admission of evidence of defendant's prior convictions was harmless error and should not be ground for reversal. As in *Bly*, the principal issue related to identity of the burglar. The evidence accumulated by the state consisted of several incriminating statements given by defendant to the police, as well as his confession to the burglary of the apartment. In addition, various witnesses testified that defendant admitted having killed Mrs. Baxter. Although he was apparently penniless prior to the burglary, he had unexplained funds afterwards. There was also testimony that would place defendant on the roof of the apartment building at the approximate time the victim's billfold was thrown down the chimney. The foregoing, together with other evidence not recited, provides a substantial basis for defendant's guilt. In addition, it should be noted that the trial court instructed the jury as to the limited purpose for which the evidence of the prior crimes could be considered. The jury was told not to consider such evidence as any indication of the guilt of defendant and defendant should not be found guilty

unless the facts and circumstances proved excluded every reasonable theory of innocence.

As his next point defendant urges this court to set aside the convictions of burglary and robbery as being duplicitous of the first degree murder charge. Relying on the case of *Jarrell v. State,* 212 Kan. 171, 510 P. 2d 127, defendant contends the crimes of burglary and robbery make up an integral part of the first degree murder charge and were improperly carved out of one criminal delinquency. We see no merit in his contention.

Defendant was charged in the amended complaint with separate counts of murder in the first degree, robbery, and aggravated burglary:

"Count 1: MURDER FIRST DEGREE

maliciously, willfully, and deliberately kill a human being, to-wit: Flora M. Baxter, while in the perpetration of a felony, to-wit: the crime of Robbery as defined by K. S. A. 1972 Supplement Section 21-3426, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas.

"Count 2: ROBBERY

On the _____ day of July, 1973, in the County of Shawnee and State of Kansas, Ronald Dean Watkins, did then and there unlawfully, feloniously and willfully, take the personal property, to-wit: a billfold containing approximately $45.00 lawful U. S. currency from the person or from the presence of another, to-wit: Flora M. Baxter, by force, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas.

"Count 3: AGGRAVATED BURGLARY

On the _____ day of July, 1973, in the County of Shawnee and State of Kansas, Ronald Dean Watkins, did then and there unlawfully, feloniously and willfully, knowingly and without authority enter into a building, to-wit: the apartment of Flora M. Baxter located at 301 Van Buren, Topeka, Kansas, in which there was a human being present, to-wit: Flora M. Baxter, with the intent to commit a theft while therein, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas."

The trial court instructed the jury on the lesser included offense of burglary (K. S. A. 21-3715) and the jury returned a verdict of guilty to the lesser offense. The crime of burglary has the same elements as aggravated burglary except the latter offense requires the presence of some person in the place entered.

Defendant's argument is based on the contention that a single wrongful act cannot furnish the foundation for more than one criminal prosecution. The facts disclosed in the record support

the state's theory that defendant committed a series of violent acts on the body of the deceased. Any one of the acts of violence was sufficient to support the element of force essential to the charge of robbery. According to the testimony of the pathologist, the victim's death resulted from asphyxiation and was preceded by acts of violence. The asphyxiation of the victim was the basis for the charge of murder. All preceding acts of violence could supply the force essential to the charge of robbery. Under the facts and circumstances of this case we conclude there was a series of wrongful acts and the charge of robbery was not duplicitous of the charge of felonious murder. We should add that the charge of burglary requires no force; therefore, it could not be duplicitous of felony murder, which requires acts of force.

Defendant next claims error in the admission of two photographs of the deceased taken during the autopsy. He contends the photographs were not relevant to the cause of death, but were introduced solely to inflame the passions of the jury. The state's Exhibit 49 is especially gruesome in that it depicts the skull of the deceased with the skin peeled back. The other photograph, state's Exhibit 52, is a facial shot of the deceased showing bruises and lacerations. The state contends the two photographs were admissible to assist the jury in understanding the pathologist's testimony.

Photographs of a decedent, including photographs taken during an autopsy, are admissible where relevant and material to the matters in issue. (*State v. Clark*, 218 Kan. 18, 542 P. 2d 291; *State v. Randol*, 212 Kan. 461, 513 P. 2d 248.) In the instant case the pathologist testified the deceased was beaten severely around the head and face. He stated that the blows to the head were hard enough to knock a person unconscious, but not severe enough to cause death. In his opinion, death was caused by asphyxiation.

In light of this testimony, it was proper for the trial court to admit photographic evidence portraying the facts described by the pathologist. Such evidence was relevant to assist the court in understanding the course of events leading to the victim's death. Consequently, we find no abuse of discretion in the trial court's admission of the photographic evidence.

Defendant further challenges the admissibility of his confession given to the police on July 17, 1973. He claims the statement was not voluntarily given and that he did not knowingly waive his *Miranda* rights. A suppression hearing was held prior to trial, after which the trial court ruled the statement was voluntarily

given and admissible in evidence. Later, during the course of trial, defendant testified for the first time that the confession given by him on July 17, 1973, was the result of threats and coercion. To be admissible a confession must be freely and voluntarily given and not under compulsion or duress. Coercion in obtaining a confession from an accused can be mental as well as physical. (*Jackson v. Denno*, 378 U. S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1 A. L. R. 3d 1205; *State v. Milow*, 199 Kan. 576, 433 P. 2d 538; *Holt v. State*, 202 Kan. 759, 451 P. 2d 221.) In *State v. Creekmore*, 208 Kan. 933, 495 P. 2d 96, we stated the test for determining the voluntariness of a statement in the following manner:

"In determining the voluntariness of a statement made by an accused the totality of the circumstances leading to and accompanying the giving of the statement should be considered. (*State v. Harden*, 206 Kan. 365, 480 P. 2d 53.) Failure to have counsel present does not *ipso facto* make the statement involuntary. It depends upon the surrounding facts and circumstances. (*State v. Cantrell*, 201 Kan. 182, 440 P. 2d 580, cert. den. 393 U. S. 944, 21 L. Ed. 2d 282, 89 S. Ct. 315.) Factors generally considered as bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused. Generally if the accused was not deprived of his free choice to admit, deny or refuse to answer, the statement may be considered voluntary." (p. 934.)

From the evidence adduced at the suppression hearing it was established that defendant was taken to the district attorney's office for questioning at approximately 3:00 p. m. on July 17, 1973. Upon arrival, he was placed in the library with Charles Hundley, who had been questioned earlier in the afternoon. The police knew defendant and Hundley had fought earlier. Hundley told the district attorney he thought he could get defendant to tell the truth about the murder. Detective Beightel began interviewing defendant at 4:00 p. m. and the interrogation continued for approximately four hours. During the course of the questioning, defendant implicated Marcia Ross. At that time, an officer picked up Marcia Ross and confronted defendant with her in the district attorney's office, where both became hostile and an argument ensued. Detective Beightel testified that at one point during the questioning he moved his chair close to defendant. Detective Johnson kept telling defendant that "it was all over with" and "it was time for

him to face up to it." Shortly afterwards, defendant signed a written confession admitting the burglary of the deceased's apartment, but denying having killed her.

The essence of defendant's argument is that the confession was obtained on the basis of threats from Hundley, a hostile confrontation with another witness, lengthy interrogation, and without the benefit of having an attorney present. He argues the totality of the circumstances necessitates a finding that the confession was not voluntarily given.

Despite what might be considered questionable tactics on the part of police and the district attorney's office, we cannot agree that defendant's confession was not the product of a free will and an independent mind. The record is replete with instances prior to the date of the challenged statement when defendant was fully and properly advised of his constitutional rights. Defendant was again advised of his rights when he was picked up for questioning on July 17. The assistant district attorney testified that he advised defendant of his rights prior to the interview and there was further explanation of the *Miranda* rights to defendant at the commencement of the transcribed statement. The record indicates defendant repeatedly stated he understood his rights and knowingly waived them. Furthermore, the confession defendant signed and read aloud included a statement to the effect that there had been no threats or promises made to him and that the confession was given freely and voluntarily.

As to the alleged threat by Hundley, it is significant that defendant did not make any claim of coercion or threats until he testified on direct examination. No mention was made of any such threat during the hearing on the motion to suppress or in any of defendant's pretrial statements.

Although defendant claims he has a very low I. Q., the record confirms the state's contention that he had an eighth grade education and was functioning in the lower portion of the average range of intelligence. On the basis of his statements in the record we conclude defendant was fully aware of his rights and there was substantial competent evidence to support the voluntariness of the confession.

As his final point, defendant contends error was committed when the trial court allowed the state to introduce evidence of a statement given by him on July 6, 1973. He argues the statement was

inadmissible since it referred to a polygraph examination. The reference appeared in the following comment by a detective:

"Q. Ron, you have been advised of your rights. You have become a suspect in this case. I'm going to tell you why. A lot of things here just aren't adding up. We've talked to a lot of people over there. We've taken statements from them; we've taken polygraph examinations. After getting it all together there's just too many discrepancies in the story you tell us. Now this business about the money isn't right. Another thing we're not clear on, we're pretty sure that you were with Flo Swiger, the bar maid up at the Elbow Tues. night."

The record reveals that prior to the admission of the statement now complained of, defendant was asked if he had any objection and he indicated he did not. Thereupon, the statement was read to the jury and no objection was made to its introduction. It further appears defendant had a copy of the statement prior to its admission and had the opportunity to read it. Under these circumstances, we must hold that defendant has waived any impropriety in the admission of the statement. Under the long-standing rule now embodied in K. S. A. 60-404, a verdict or finding will not be set aside because of the erroneous admission of evidence, unless there appears in the record a timely and specific objection to admission of the evidence. (*State v. Marsh*, 211 Kan. 585, 506 P. 2d 1132.)

We have reviewed all the points raised by defendant on this appeal and we find no instances of error which would require reversal of the conviction. Accordingly, the judgment of the trial court is affirmed.