592 P.2d 1288

**The STATE of Arizona, Appellee,**

v.

**Tennis KENNEDY and David Kennedy, Appellants.**

**No. 2 CA-CR 1444-2.**

Court of Appeals of Arizona, Division 2.

Jan. 30, 1979.

Rehearing Denied March 6, 1979.

Review Denied March 27, 1979.

**24**

Stephen D. Neely, Pima County Atty. by David R. Cole, Deputy County Atty., Tucson, for appellee.

William L. Scholl, Tucson, for appellant Tennis Kennedy.

Stephen M. Weiss, Tucson, for appellant David Kennedy.

## OPINION

HOWARD, Judge.

Appellants were found guilty by a jury of two counts of attempted murder and one count of conspiracy to commit murder. Tennis Kennedy was sentenced to concurrent terms in the Arizona State Prison of not less than two nor more than three years and his brother David was sentenced to concurrent terms in the Arizona State Prison of not less than one nor more than three years. They present nine questions for review:

1. Did the admission in evidence of statements obtained from appellants just prior to their formal arrest, where the police intended to arrest them and deliberately refrained from making the formal arrest or advising them of their *Miranda* rights in order to obtain such statements, constitute reversible error?

2. Did the trial court commit reversible error by refusing to instruct the jury regarding the voluntariness of certain statements made by appellants as a result of police interrogation?

3. Did the trial court commit reversible error by admitting in evidence certain statements of appellants which were not admissions or confessions, and were not subject to any hearsay exception?

4. Were appellants denied a speedy trial as a result of delay occasioned by the state's appeal from an order granting appellants' motions to suppress?

5. Did the court erroneously grant the state's motion to continue, and erroneously deny appellants' motion to dismiss based upon a violation of the speedy trial provisions of Rule 8, 17 A.R.C.P.?

6. Did the trial court err in failing to give a complete and accurate instruction on the issue of motive?

7. Did the trial court err in rejecting appellants' offer of proof?

8. Did the introduction of tape recordings and transcripts thereof, and their eventual submission to the jury accompanied with a misleading jury instruction, constitute reversible error?

9. Did the trial court err in admitting evidence of appellants' other bad acts?

Most of the relevant facts can be found in our opinion in *State v. Kennedy,* 116 Ariz. 566, 570 P.2d 508 (App.1977) which dealt with the motion to suppress. Briefly, one Leo Beisler testified that appellants hired him to kill their partner and his wife. Beisler went to the authorities, eventually was "bugged", and several of his conversations with appellants were recorded. Appellants testified at trial that it was all a joke. According to them, Beisler was an uninvited, messy and odiferous house guest and they had devised the entire plot to get him to leave, because he refused to. They never thought at any time that Beisler would actually carry out the plot.[1] They said the reason they did not simply throw Beisler out of the house was that they knew he was wanted in Tucson for forgery. They were afraid that if they did eject him, and he was caught by the police, they might be arrested

---

1. Appellants and Beisler discussed several ways to do the killing. They settled finally on shooting the partner and his wife at close range. Appellants provided Beisler with a "safe gun" and ammunition.

for harboring a fugitive. We shall consider the issues seriatim.

The first issue raised by appellants was decided adversely to them in the earlier case, *State v. Kennedy,* supra. Our prior ruling constitutes the law of the case and we see no reason to reconsider the issue. See *State v. Waldrip,* 111 Ariz. 516, 533 P.2d 1151 (1975).

■ Appellants' contention on the voluntariness instruction must also fail because the only evidence of "involuntariness" was that which we discussed in *State v. Kennedy,* supra. Since there was no evidence of involuntariness, no instruction was necessary. *State v. Sears,* 22 Ariz.App. 23, 522 P.2d 784 (1974).

■ After the "hits" were supposed to have taken place, Detectives Marmion and Bunting went to appellants' apartment complex. Appellants had arranged for a poolside party as a cover for their involvement in the murders. The detectives, who were "bugged", told appellants that their partner and his wife had been murdered and asked appellants if they knew who could have done it. The transcript of this conversation was admitted into evidence over appellants' objection that it was hearsay. Appellants contend this was error, citing *Government of Virgin Islands v. Lovell,* 378 F.2d 799 (3rd Cir. 1967). We do not agree. The issue in *Lovell* was whether it was error to charge the jury that if it found that the defendant's exculpatory statements were false, it could consider this as circumstantial evidence pointing to consciousness of guilt. The court held that the instruction was proper. In so doing, the court noted the rule stated in 4 Wigmore on Evidence (3rd Ed.) Sec. 1072(5) that a party's denial of a third person's statement destroys entirely the grounds for using it and therefore the third party's statement and the denial cannot be offered into evidence as an admission. That is not involved here. The transcript of the poolside conversation contains admissions by both appel-

lants. Statements of any of the conspirators in an attempt to conceal the conspiracy are admissible. *Vort v. McGrath,* 99 F.Supp. 57 (D.D.C.1951), amended on other grounds 108 F.Supp. 263 (D.D.C.1951); 31A C.J.S. Evidence § 362b.

■ Appellants contend the trial court erred when it refused to grant their motion to dismiss for lack of a speedy trial. They argue that neither the delay occasioned by the state's appeal from the motion to suppress nor the delay caused by the granting of a continuance was excludable under Rule 8.4, 17 A.R.C.P. We do not agree.

We granted an ex parte stay of the trial court proceedings when the state filed its notice of appeal in *State v. Kennedy,* supra. Appellants made no motion to vacate the stay. Had they done so, the state would have had the opportunity to take the steps delineated in *State v. Million,* 120 Ariz. 10, 583 P.2d 897 (1978) by either dismissing the case in the trial court and proceeding with the appeal or showing us that it was one of the rare instances where a stay should be granted.[2] Since the stay order was never set aside, its effect was to preclude the trial court from continuing with the prosecution. Under such circumstances the period in which the stay order was in effect is not counted under Rule 8, 17 A.R.C.P. *State v. Steele,* 23 Ariz.App. 73, 530 P.2d 919 (1975).

■■ Under Rule 8.2(d), the trial of this case should have commenced at the latest on January 2, 1978, sixty days after the service of the mandate.[3] The case was set for trial on December 29, 1977. On December 28 the trial court heard the state's motion to continue. We have no transcript of the hearing but the state's motion to continue contains an affidavit by the deputy county attorney stating that David Kennedy's counsel had told counsel for the state that he intended to take the case to the United States Supreme Court, that in anticipation of the matter going to the United States Supreme Court no trial preparation was commenced, and that he was newly

2. Appellants were out on bond during the pendency of *State of Kennedy,* supra.

3. December 31, 1977, the sixtieth day, was a Saturday.

assigned to the case and had not had time to prepare. Over appellants' objection the trial court continued the trial to January 11, 1978, finding that extraordinary circumstances existed justifying the continuance, to-wit, the fact that the deputy county attorney was not the one who had begun the case.

On January 6, 1978, David Kennedy, without objection, was granted a continuance because of his attorney's scheduling conflict and the trial court ordered the trial continued to January 25, with all pending motions to be heard on January 25 and the trial to begin January 26. The trial did not actually commence until February 1, 1978. January 25, appellants renewed their motion to dismiss for lack of a speedy trial and the motion was denied. They now contend that the trial court erred in denying this motion because the continuance granted to the state was an error and the continuance granted at David Kennedy's request was the result of this error. We do not agree with appellants' contention.

Rule 8.5(b) provides that a continuance will only be granted "upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice." The trial court's exercise of discretion on a motion for continuance will not be disturbed unless there is a clear abuse of discretion. *State v. Ortiz,* 117 Ariz. 264, 571 P.2d 1060 (1977). The prosecutor did not know until December 15, two weeks before the matter was set for trial, that David Kennedy was not going to petition the United States Supreme Court for a writ of certiorari. We are not able to say that under these circumstances no reasonable judge would conclude that grounds existed under Rule 8.5(b), 17 A.R.C.P. justifying a continuance.

■ Appellants offered an instruction on motive which was given by the trial court as modified. Appellants now claim this was error. Although appellants objected to the modification they did not specifically state their grounds. Their objection is therefore waived and we shall not consider it. *State*

*v. Toney,* 113 Ariz. 404, 555 P.2d 650 (1976); *State v. Canedo,* 115 Ariz. 60, 563 P.2d 315 (App.1977).

Appellants offered to prove through the testimony of Mr. and Mrs. McClure that Leo Beisler stayed at the McClure house in 1972 and 1973 and while staying there borrowed money from them, ate their food, made a total mess out of the house, smelled, and would not leave when requested. They would have also testified that they had to threaten him to make him leave. Appellants also offered to prove through the testimony of another witness that Leo Beisler stayed at her house in 1976 and made a mess out of the house. The trial court rejected these offers of proof. Appellants claim error because this evidence would have tended to corroborate their testimony.

■ We believe that rejection of the McClures' testimony was reversible error. The state contends that such testimony was merely cumulative. We do not agree. There is a difference between evidence which is "corroborative" and evidence which is "cumulative". Corroborative evidence tends to corroborate or to confirm, whereas cumulative evidence merely augments or tends to establish a point already proved by other evidence. *State v. Turner,* 92 Ariz. 214, 375 P.2d 567 (1962). Appellants' defense of lack of intent was wholly based on the theory that they had concocted the entire plot only to get Beisler to leave their house, with no thought that he would ever carry it out. However, it is wrong to characterize their testimony as having established the facts they stated. The jury had a perfect right to disregard this testimony. In fact, the state's entire case was calculated to demonstrate to the jury that the appellants were not telling the truth.

The admissibility of the McClures' testimony depends upon its relevance.[4] Evidence is relevant if it has any basis in reason to prove a material fact in issue. *Reader v. General Motors Corp.,* 107 Ariz. 149, 483 P.2d 1388 (1971). The most accepted test of relevance is: Does the evidence offered render the desired inference more probable than it would be without the evi-

4.   See 1 Wigmore on Evidence (3rd Ed.) Sec. 39 for a discussion of "collateral" evidence.

dence? C. McCormick, Handbook of the Law of Evidence, Sec. 152 at 318; M. Udall, Arizona Law of Evidence, Sec. 111 at 204. Appellants' intent was a material fact in issue. The inference which they sought to draw from their own testimony was that they lacked criminal intent. Does the fact that Beisler would not leave the McClures' premises without being threatened support appellants' testimony that he would not leave their apartment upon request, thus making the desired inference, lack of criminal intent, more probable than it would be without the McClures' testimony? We believe it does. The testimony of the McClures would have been corroborative, not cumulative.

■ A reasonable discretion should be allowed the trial court in determining the relevance and admissibility of evidence. *State v. Turner,* supra; *State v. Wallace,* 83 Ariz. 220, 319 P.2d 529 (1957). Here, however, this discretion was abused and caused reversible error. The McClure's testimony went to the heart of appellants' defense.

■ Because it is likely that this case will be retried, we shall discuss the remaining issues presented by appellants. They contend the trial court erred in denying their motions to suppress the tape recordings of their conversations on April 29 and May 3, 1976 because portions were inaudible. We do not agree. We first note that Tennis Kennedy admitted that the tape of May 3 was an accurate recording of their conversation with the detectives. He also admitted that the tape of April 29 reflected his conversation with Leo Beisler. Furthermore, even where portions of a tape recording are inaudible, the trial court may, in the exercise of its discretion, allow the proponent to introduce it into evidence. *State v. Dante,* 25 Ariz.App. 150, 541 P.2d 941 (1975), cert. den. 429 U.S. 853.

■ The trial court did not err in allowing the jurors to take the transcripts of the tapes into the juryroom. The transcripts, having been admitted into evidence, were like any other tangible evidence. Rule 22.2, 17 A.R.C.P. allows the jurors to take with them, upon retiring for deliberation, such tangible evidence as the court in its discre-

tion shall direct. In *State v. Watkins,* 219 Kan. 81, 547 P.2d 810 (1976) the Supreme Court of Kansas, in holding that it was permissible to allow the jurors to take a defendant's signed confessions into the juryroom, stated:

"A signed confession which has been found by the court to be voluntarily given is one of the strongest forms of physical evidence available to the prosecution. We see no reason to distinguish between it and any other physical evidence of a concededly damaging nature, such as weapons, instruments of the crime, or photographic evidence which is generally taken to the jury room." 547 P.2d at 820.

Analogizing to the signed confession in *Watkins,* we believe the court did not err in allowing the jurors to take the transcripts of the tapes into the juryroom.

■ Prior to the admission of the tapes into evidence, the trial court advised the jury that certain portions of the tape had been deleted because of legal rulings. Appellants moved for a mistrial because of this instruction. The court denied the motion. Appellants contend the instruction was analogous to advising the jury that the defense had won a motion to suppress, allowing it to speculate that there might be further incriminating evidence. We do not agree. The instruction was given before the tapes were played in open court. The court told the jury it was giving the instruction because there were gaps in the tapes and it did not want them to think that somebody had unlawfully tampered with them. The court further instructed that they were not to draw any conclusions as to the authenticity of the tapes because of the gaps nor to be concerned with the reason certain portions had been deleted. We believe the court's instruction was appropriate, correct, and not erroneous.

■ Appellants' final claim of error is directed to allowing testimony that on May 3, 1976 they removed from their storage shed a number of stolen calculators and a sawed-off shotgun. They contend that this was evidence of prior bad acts and was inadmissible. We do not agree. Evidence of other crimes may be offered for the

purpose of establishing intent. *State v. Tostado*, 111 Ariz. 98, 523 P.2d 795 (1974). Tennis Kennedy testified that on May 3 he went to the storage shed to get some liquor for the party that evening. He happened to see the calculators and shotgun and decided he did not want to have anything around which was illegal or which reminded him of Leo Beisler who, he claimed, sawed the barrel off the shotgun and who they expected would be leaving shortly. He stated it was just a coincidence that he happened to remove them on May 3, the date that Beisler was supposed to make the "hit". That his action was unplanned was contradicted by a taped conversation which occurred afterwards, in which Beisler asked the Kennedys if they had removed the calculators. The testimony concerning these items tended to show that the plot was not a joke, and that appellants entertained the requisite criminal intent and removed the items from the storage shed in case there was an investigation and search of their premises after the murders took place.

Reversed.

RICHMOND, C. J., and HATHAWAY, J., concur.